Case No.: 24-50377

---

# In the United States Court of Appeals for the

# Fifth Circuit

**GEARY SCHINDEL**

*Plaintiff – Appellant*

**V.**

**EDWARDS AQUIFER AUTHORITY,**

*Defendant - Appellee*

---

**On Appeal from**
United States District Court for the Western District of Texas

5:22-CV-960

---

**BRIEF OF APPELLANT GEARY SCHINDEL**

---

**Edward L. Piña**
Edward L. Pina & Associates, P.C.
***The Ariel House***
8118 Datapoint Drive
San Antonio, TX 78229
Telephone: (210) 614-6400
Facsimile: (210) 614-6403
Email: epina@arielhouse.com
 **Counsel for Appellant**

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. **Geary Schindel** (Plaintiff/Appellant);

2. **Edward L. Piña**, Edward L. Piña & Associates, P.C, The Ariel House, 8118 Datapoint Drive, San Antonio, Texas 78229 (Attorney for Appellant Geary Schindel on appeal);

3. **Edwards Aquifer Authority**, 900 E. Quincy, San Antonio, Texas 78215 (Defendant/Appellee);

4. **Gilbert Sanchez**, Kemp Smith, L.L.P, 221 N. Kansas, Suite 1700, El Paso, Texas 79901 (Attorney for Defendant/Appellee on appeal);

5. **Deborah Clark Trejo**, Kemp Smith, L.L.P, 2905 San Gabriel St, Suite 205, Austin, Texas 78705 (Attorney for Defendant/Appellee on appeal);

6. **The Honorable Jason K. Pulliam** (United States District Court Judge);

7. **The Honorable Richard B. Farrer** (United States Magistrate Judge)


*/s/ Edward L. Pina*
**Attorney of record for Geary Schindel**

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Geary Schindel respectfully requests an opportunity to present oral argument as Appellant believes this could significantly aid the decision making process in this case.

# TABLE OF CONTENTS

Contents                                                                 Page(s)

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT .............................................. iii

TABLE OF CONTENTS .................................................................................... iv

TABLE OF AUTHORITIES ............................................................................... vi

STATEMENT OF JURISDICTION ......................................................................... 1

STATEMENT OF THE ISSUES ............................................................................. 2

STATEMENT OF THE CASE ............................................................................... 4

    A. Hostile Work Environment ...................................................................... 6

    B. Adverse Employment Actions .................................................................. 7

        1) Demotion was Classic Pretext .............................................................. 8

        2) Claims by EAA Not Supported ............................................................. 9

        3) EAA's Failure to Follow Its Policies and Procedures .................................. 10

        4) Ageisms and Patterns .................................................................... 11

SUMMARY OF THE ARGUMENT ....................................................................... 12

ARGUMENT ................................................................................................ 16

I. Appellant's First Issue ................................................................................ 16

    A. Standard of Review ............................................................................. 16

    B. Law for Dismissal .............................................................................. 17

II. Appellant's Second Issue ........................................................................... 19

A. Standard of Review .........................................................................20

B. Law for Summary Judgment ...........................................................20

C. Burdens Under the ADEA ...............................................................21

D. Plaintiff's Bogus Demotion .............................................................24

    1) Geary Schindel has Shown a Prima Face Case of Age Discrimination .......24

    2) The EAA's Alleged Non-Discriminatory Reason for Demoting Plaintiff ...26

    3) The Evidence is Much More Than Sufficient to Show that the Reason for

    Plaintiff's Demotion was Pretext for Age Discrimination and Retaliation ......27

III. Appellant's Third Issue ....................................................................29

A. Standard of Review .........................................................................30

B. Law for Summary Judgment ...........................................................30

CONCLUSION AND PRAYER ............................................................37

CERTIFICATE OF SERVICE ...............................................................38

CERTIFICATE OF COMPLIANCE ......................................................39

# T<small>ABLE</small> O<small>F</small> A<small>UTHORITIES</small>

## CASES

*Anderson v. Goodyear Tire & Rubber Co.*,
367 F.Supp. 2d 1061 (E.D. Tex. 2004) .................................................31

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). ........................ 20, 21, 30

*Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*,
29 F.4th 226 (5th Cir. 2022).................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................17

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*,
748 F.3d 631 (5th Cir. 2014) ...............................................................18

*Bryan v. McKinsey & Co., Inc.*,
375 F.3d 358 (5th Cir. 2004) ...............................................................30

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................... 21, 30

*Cicalese v. Univ. of Tex. Med. Branch*,
924 F.3d 762 (5th Cir. 2019) ...............................................................18

*Cody v. Allstate Fire & Cas. Ins. Co.*,
19 F.4th 712 (5th Cir. 2021).................................................................16

*Crawford v. Formosa Plastics Corp., La.*,
234 F.3d 899 (5th Cir. 2000))...............................................................23

*Dabbasi v. Motiva Enterprises, L.L.C.*,
107 F.4th 500 (5th Cir. 2024)........................................................ 34, 35

*Foman v. Davis*,
371 U.S. 178 (1962) ............................................................................19

*Frith v. Guardian Life Ins. Co. of Am.*,
9 F. Supp. 2d 734 (S.D. Tex. 1998).....................................................17

*Harvill v. Westward Commc'ns, LLC,*
    433 F.3d 428 (5th Cir. 2005) ................................................................15

*Heinsohn v. Carabin & Shaw, P.C.,*
    832 F.3d 224 (5th Cir. 2016) ...............................................................21

*Hitt v. City of Pasadena,*
    561 F.2d 606 (5th Cir. 1977) ...............................................................19

*Iglesias v. Electrolux Home Care Products, Ltd.,*
    2019 WL 6711476, (W.D. Tex. — El Paso 2019) ....................... 23, 35

*Jackson v. Cal-Western Packaging Corp.,*
    602 F.3d 374 (5th Cir. 2010) ...............................................................22

*Jones v. Greninger,*
    188 F.3d 322 (5th Cir. 1999) ...............................................................17

*Leal v. McHugh,*
    731 F.3d 405 (5th Cir. 2013) ...............................................................22

*Machinchik v. PB Power, Inc.,*
    398 F.3d 345 (5th Cir. 2005) ...............................................................34

*Martin L. Eby Constr. Co. v. Dallas Area Rapid Transit,*
    369 F.3d 464 (5th Cir. 2004) ...............................................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) .............................................................................21

*Mayfield v. Currie,*
    976 F.3d 482 (5th Cir. 2020) ...............................................................16

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) .............................................................................22

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.,*
    934 F.3d 447 (5th Cir. 2019) ................................................. 22, 23, 24

*Mendoza v. Foot Locker Retails, Inc.,*
    SA-21-CV-000903-XR, 2024 WL 559259, *1 (W.D. Tex.—San Antonio Feb.
    12, 2024) ...............................................................................................34

*Miller v. Raytheon*,
716 F.3d 138 (5th Cir. 2013) ................................................................27

*Nichols v. Loral Vought Sys. Corp.*,
81 F.3d 38 (5th Cir. 1996) ....................................................................31

*Norseworthy v. HISD*,
70 F.4th 332 (5th Cir. 2023) .................................................................22

*Owens v. Circassia Pharms., Inc.*,
33 F.4th 814 (5th Cir. 2022) .................................................................23

*Poole v. City of Shreveport*,
691 F.3d 624 (5th Cir. 2021) ................................................................20

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ................................................................ 20, 21, 32

*Ripoll v. Dobard*,
618 F. App'x 188 (5th Cir. 2015) .........................................................24

*Saketkoo v. Adm'rs of Tulane Educ. Fund*,
31 F.4th 990 (5th Cir. 2022) .................................................................25

*Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*,
310 F.3d 870 (5th Cir. 2002) ................................................................20

*Thorton v. Lymous*,
850 Fed. Appx. 320 (5th Cir. 2021) ............................................... 18, 32

*Vander Zee v. Reno*,
73 F.3d 1365 (5th Cir. 1996) ................................................................17

**STATUTES**

29 U.S.C § 623 ..................................................... 2, 14, 20, 22, 30, 37

**RULES**

FED.R.CIV.P. 12(b)(6) ............................................... 8, 12, 17, 18

FED. R. CIV. P. 56(a) ..............................................................20

Case No.: <u>24-50377</u>

---

In The United States Court Of Appeals for the Fifth Circuit

**GEARY SCHINDEL**
            **PLAINTIFF-APPELLANT**

**V.**

**EDWARDS AQUIFER AUTHORITY,**
            **DEFENDANT-APPELLEE**

---

## <u>STATEMENT OF JURISDICTION</u>

**1.** The jurisdiction of the United States District Court for the Western District of Texas was founded upon 28 U.S.C. § 1331.

**2.** The jurisdiction of the United States Court of Appeals for the Fifth Circuit is founded upon 28 U.S.C. § 1291, and is based upon the following particulars:

**I.** Date of Judgment: **April 23, 2024**; ROA.721.

**II.** Filing of Notice of Appeal: **May 3, 2024**. This notice of appeal was timely. FED. R. APP. P. 4(b)(2). ROA.741.

# STATEMENT OF THE ISSUES

ISSUE ONE: The district court misapplied the standard for dismissing Appellant Schindel's specific and supported claims that he was subjected to a hostile work environment based on his age, over sixty-two (62), at the time of his demotion and, over sixty-four (64), at the time of his coerced retirement in violation of the Age Discrimination in Employment Act (ADEA) 29 U.S.C § 623.

ISSUE TWO: Appellant Schindel presented a prima facie case and probative facts from which an objective reader or jury could conclude that he was discriminated against based on his age (over 60), and was retaliated against for filing his EEOC Complaint and asserting his rights under the ADEA, 29 U.S.C. § 623 to a workplace free from age discrimination or retaliation.

ISSUE THREE: The district court failed to address Schindel's evidence of repeated ageisms and fabricated adverse actions against EAA employees in their fifties (50's) and sixties (60's) or to address the testimony of the Professional Geologist that testified personally and in her expert capacity that she was at no time placed in danger during the field inspection or that Mr. Schindel ever failed to closely and professionally supervise her during the field inspection; the three professional geologists present for the inspection disputed the bases claimed for the disciplinary action against Mr. Schindel. This was more than sufficient evidence for a

reasonable jury to believe the employer's reasons were pretexts for unlawful discrimination in violation of the ADEA, 29 U.S.C § 623.

## STATEMENT OF THE CASE

1.    Geary Schindel, a professional licensed Geologist, was employed by Edwards Aquifer Authority for well over twenty (20) years.  (Record on Appeal 514, hereinafter referred to as ROA.514.).  Mr. Schindel was first hired as the Chief Technical Officer to develop research and data collection programs for the EAA. *Id*.  In recent years Mr. Schindel worked as Chief Technical Officer and Director of Aquifer Science Program. *Id*.  In this capacity, he reported to the Executive Director of the Aquifer Management Services Department. ROA.592. Plaintiff Schindel supervised three senior employees: Steve Johnson, Jim Winterle and Mark Hamilton who were managers within the Aquifer Science Program. ROA.590.  Each of these employees were over fifties (50's) or sixties (60's). *Id*.

2.    An executive director position became available and Mr. Schindel was encouraged to apply but chose not to do so.  ROA. 592.  Mark Hamilton applied and was selected and soon thereafter, began reorganizing the EAA favoring younger employees to the detriment of senior employees.  ROA.501-2; ROA.592. Hamilton was often vocal in the workplace about ridding the EAA of its older, more senior staff.  ROA.526-7.

3.    Soon after Hamilton became plaintiff Schindel's supervisor, Hamilton decided to reorganize the department by replacing the directors that reported to

4

him. ROA.593.  Specifically, Hamilton had three directors reporting to him: Geary Schindel (Aquifer Science), Jim Winterle (Ground Water Modeling), and Jim Boenig (Aquifer Protection).  *Id*.  Plaintiff, Geary Schindel, was replaced as Director of Aquifer Science and named Director of Karst Initiatives where he no longer supervised staff and had very limited management responsibilities. ROA.594.  Steve Johnson was named Director of Aquifer Science. Hamilton stated he made the change because "[Johnson] would soon be retiring in about a year" (early 2018).  *Id*.  Although Johnson had no such plans, he decided to take the promotion and follow through with the suggested retirement. Hamilton, according to Jon Cradit, P.G.[1], then started causing problems for older workers by accusing them of foul ups or mistakes and trying to get them to "confess" to things that were Hamilton's responsibility and then terminate them for these fabricated foul ups or to issue them negative employee reviews in order to terminate them for alleged performance issues or cause them to resign or retire.  ROA.526; ROA.594.  This soon became a pattern by Mark Hamilton that was consistently ratified by EAA top management.

4.     Hamilton then downgraded Geary Schindel removing his title as Director by making Schindel report to James Boenig, Director of Aquifer Protection. ROA.600.  This downgrade resulted in plaintiff losing very important duties and

---

[1] "P.G." refers to a Licensed Professional Geologist or Licensed Professional Geoscientist.

responsibilities in the EAA workplace but did *not* affect his pay.  ROA.596.

Hamilton's hostility toward Schindel and other older employees was "palpable in

the workplace."  ROA.526-27; ROA.530.  Mr. Schindel expressed his opposition

to these important changes and treatment of senior employees, but he did not file

an Equal Employment Opportunity Commission (EEOC) complaint at that time.

On January 11, 2020, Geary Schindel was demoted on bogus grounds resulting in a

loss of pay of over $50,000.00 per year.  ROA.624; ROA.675.  Mr. Schindel

quickly filed an EEOC complaint after his baseless demotion.

### A. Hostile Work Environment

**5.**     The Court erred in dismissing plaintiff's pre-discovery First Amended

Complaint with regards to the hostile work environment based on age and

retaliation on February 13, 2023.  ROA.271-82.  This was wholly improper

because by this time there were numerous senior employees that had been ousted

by EAA management on account of their ages (over 60) and replaced with persons

outside the protected group by persons who were less qualified or sometimes

unqualified for the positions.  ROA.630-1; ROA.682-3.  This included but was not

limited to Jon Cradit, P.G. (60's), Brenda Davis (60's), Richard Carreon (60's),

Yolanda Sanchez (60's), Iris Lucas (60's), James Winterle (60's), Brock Curry

(60's) as well as H. Moncada (60), C. Ahrens (60's), Carl Parker (60's), J. Barela

(60's), Teresa Montes Gutierrez (60's), as well as others in their fifties (50's) like

Shaun Gibson, Elizabeth Woody (50's), Margaret Garcia (50's), Nancy Strilka (50's) or sixties (60's) and others whose identities were not known at this pre-discovery stage. ROA.630-1. These were all senior employees of a public agency with about 100 employees.

## B. Adverse Employment Actions

**6.**     As previously noted, Schindel was demoted from Chief Technical Officer to Senior Hydrogeologist in January 2020. ROA.675. This included the loss of *all* his management responsibilities, supervisory duties and a reduction in pay of over thirty (30%) percent which was well over $50,000 per year. ROA.624; ROA.675. Mr. Schindel was issued a bogus disciplinary action by second level supervisor Mark Hamilton, Director of Management Services. ROA.676-7. This corrective counseling and demotion was mere pretext, calculated to mask unlawful discrimination based on age (over 60). ROA.615. Moreover, Mr. Schindel was denied an opportunity to rebut the false and/or inaccurate bases claimed for the demotion as Mr. Schindel had a right to do under the EAA's published personnel policies and procedures. ROA.677. Mr. Schindel did not discover this however until he was provided a copy of his personnel file during the discovery process and he learned the demotion had been improperly approved by top management well before Mr. Schindel's opportunity to factually rebut the charges. ROA.618-9; ROA.62; ROA.677. It was even later in the discovery process that Mr. Schindel

learned that the two female geologists he allegedly endangered scoffed at the idea when independently interviewed by Human Resources (HR) after his demotion. ROA.535-6. It is respectfully submitted this was part of the proof that EAA's actions were pretext for age discrimination.

7.   It is important to note that after filing suit Geary Schindel wasted no time in promptly serving written discovery on the EAA because he knew the substantial numbers of senior employees being terminated or coerced into retiring and also knew that the EAA had been uncooperative and opaque in their responses to his EEOC complaint at the administrative stage. ROA.683-4. Unfortunately, the District Judge's new special standing order stayed discovery if a party defendant filed Rule 12(b)(6) responses to a lawsuit.

8.   Plaintiff demonstrated the EAA's alleged nondiscriminatory reasons for the hostility of his work environment based on age and for his demotion were not factual or credible and were, in fact, mere pretext calculated to mask unlawful discrimination by Hamilton based on age and retaliation against Mr. Schindel for opposing discrimination in the workplace. The EAA, a tax supported entity, ratified Hamilton's discriminatory actions in this case and many others involving senior employees. ROA.526.

### 1) Demotion was Classic Pretext

8

**9.**    Mark Hamilton disciplined Mr. Schindel for allegedly allowing two professional geologists to "enter a confined space."  ROA.613-4.  Gary Schindel followed EAA procedures in every way including the EAA's Cave Entry Procedures.  ROA.616.  Mr. Schindel's fellow EAA inspection team members conducted visual inspections as had been discussed at the pre-inspection planning meeting of the inspection team a month before the scheduled inspection.  ROA.604.  Mark Hamilton did not attend the pre-inspection planning meeting; or participate in any of the nineteen (19) field inspections carried out by the inspection team, then claimed "safety" had been compromised and that Mr. Schindel had been "insubordinate" without any legitimate basis in truth or fact. ROA.509; ROA.536-8.

### 2) Claims by EAA Not Supported

**10.**    It is also important to note that the two female professional geologists were not interviewed by Hamilton or any member of the EAA's Human Resources Department until *after* Schindel's demotion.  ROA.535-6.  Moreover, both geologists, Jesse Chadwick, P.G. and Jennifer Adkins- Schudrowitz, P.G. upon being interviewed by HR personnel firmly and independently stated that they were never placed in a dangerous situation by Mr. Schindel and each explained they were experienced and professional and that Mr. Schindel was the most safely

conscious and experienced geologist and that he had closely supervised them. ROA.536; ROA.538-9.

### 3) EAA's Failure to Follow Its Policies and Procedures

**11.**     Geary Schindel carefully responded and rebutted each allegation on January 6, 2020.   ROA.672.   The EAA however had already approved the "corrective counseling" and demotion on December 23, 2019.   ROA.677.   As a result, Mr. Schindel was demoted from his Chief Technical Officer position, and relieved of his liaison duties to the Research and Technology Committee of the EAA (at a pay rate of **$164,004.80**) to a Senior Hydrologist (at a pay rate of **$114,004.80**) which is a difference of **$50,256.94** in his pay alone.   ROA.678.   If this is not remedied it will have a negative impact on Mr. Schindel's retirement pay and benefits *for the rest of his life*.   ROA.530.

**12.**     Geary Schindel made it clear from the outset that he objected to the adverse personnel actions (demotion) and complained about his unlawful discriminatory treatment.   ROA.621.   Then on February 10, 2020, Schindel was issued a negative performance evaluation by Mark Hamilton (Mr. Schindel had an overall rating of "meets" expectations with two negative areas in the review).   *Id*.   Plaintiff Schindel contended this was retaliation for Schindel's opposition to the discriminatory and

hostile work environment against older employees in the protected age group (60's) that Hamilton created or spearheaded at the EAA.

### 4) Ageisms and Patterns

**13.** Jon Cradit, P.G. testified below about Hamilton's penchant for negatively manipulating the conditions of employment of older employees that reported to him as either a first level or second level supervisor. "I believe he has done this systematically in an effort to rid the EAA of older employees." ROA.526. Cradit further testified having heard Mark Hamilton and others make age related slurs in the EAA workplace. "I did not think much of these age related remarks at first but I came to realize that Hamilton was targeting older employees like me and Geary Schindel" as well as other senior staff. ROA.525-7. "When I say age slurs I mean words like you "old guys" or "we need to get some new blood in here" ROA.527. Or, remarks like "you can get two young guys for the cost of one of those 'old guys.'" "This set the tone for the EAA in my view…" *Id*. Hamilton's mistreatment of senior employees and age related slurs was emulated by others and created a hostile work environment based on age (over 60).

## SUMMARY OF THE ARGUMENT

Mr. Schindel discussed different phases of the planned upcoming inspection and mapping effort with staff and other participants well in advance and scheduled a planning meeting in November 2019. He also discussed specific duties and areas of responsibility with specific team members. Alleged discriminatory official, Mark Hamilton, was invited to attend and to participate in this planning meeting but apparently chose not to do so. Moreover, Hamilton's claim that Mr. Schindel "recklessly exposed" two employees to a dangerous situation is patently false and untrue.

In paragraph two (2) of the EAA's Motion to Dismiss under Rule 12(b)(6), the agency claims that Mr. Schindel's "sole" claim is that he was demoted because of his age (over 60) but this is also inaccurate and incomplete because Mr. Schindel made it clear that the discriminating official (Mark Hamilton) subjected him and other senior staff to a hostile work environment and constructively terminated him or coerced him into retiring. The coerced retirement claim was made during the EEOC investigation as well as in Plaintiff's Original Complaint and First Amended Complaint. ROA.201-14. Mr. Schindel explained that Hamilton ordered him to make changes on behalf of the EAA to a peer-reviewed

United States Fish and Wildlife Services document that were not supported by the data. ROA.625-6.

After careful consideration, Mr. Schindel came to the opinion as a licensed Professional Geologist that the changes Hamilton was ordering were not supported by the empirical geoscience data. Hamilton's order included the statement that if Mr. Schindel failed or refused to make the changes, he would be terminated for insubordination. ROA.625-6. It became clear to Mr. Schindel that to make the ordered changes would cause him to violate his oath and licensure as a Professional Geologist. Hamilton's order to Schindel violated the terms, and conditions of employment by manipulating the terms and conditions so as to cause him or any reasonable person to terminate himself rather than participate in the wholly unprofessional, unsupported changes to a peer-reviewed document. This "Hobson's choice" was retaliatory (by the EAA through Hamilton) for Mr. Schindel having asserted his rights under the ADEA and opposing discrimination in the EAA workplace by filing an EEOC complaint on March 7, 2020 and cooperating with the EEOC investigation for the following year. ROA.553-4. The record shows Schindel's duties and responsibilities were distributed to younger employees and his Chief Technical Officer position was reclassified as an Environmental Scientist II position and filled by an employee outside the protected group in her late thirties (30's). ROA.667; ROA.669.

## I. Appellant's Issue One

The district court misapplied the standard for dismissing Appellant Schindel's specific and supported claims that he was subjected to a hostile work environment based on his age, over sixty-two (62), at the time of his demotion and, over sixty-four (64), at the time of his coerced retirement in violation of the Age Discrimination in Employment Act (ADEA) 29 U.S.C § 623.

On February 13, 2023, the Court entered its Amended Memorandum Opinion and Order (ROA.271.) partially granting Defendant's 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint.  In the Order, the Court dismissed Plaintiff's causes of action under the ADEA for hostile work environment, presumed retaliation, "mixed motive," and "any other intended or presumed cause of action." ROA.282.  The Court denied Defendant's Motion to Dismiss only as to Plaintiff's claim that his demotion constituted age discrimination under the ADEA. ROA.271-82.

Plaintiff construed this to mean that Schindel's claim that he was constructively discharged (which he characterizes as a "coerced retirement") was retaliatory for having challenged his demotion as a form of retaliation for having filed the ADEA complaint may have also been dismissed.  The court's Order is unclear with regard to whether Mr. Schindel's coerced retirement claim is

disposed of under either the catch-all "any other intended or presumed cause of action" language or, more specifically, the court's express language that the alleged constructive discharge was not based upon his age. ROA.277. It is respectfully submitted that an objective reader or potential juror is much more likely to conclude that Geary Schindel's coerced retirement allegation was based on retaliation for having asserted his rights under the ADEA to a workplace free from age discrimination and/or retaliation. *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 440 (5th Cir. 2005). Geary Schindel did not limit his constructive discharge to the fact that he was in his mid-sixties but rather that the EAA's order to Mr. Schindel to make changes to a peer-reviewed U.S. Fish and Wildlife Service document that was unsupported by the geoscience data (in order to make the EAA appear more favorably in the publication) would subject Mr. Schindel to termination by Mark Hamilton if plaintiff Schindel refused to carry out his order or could subject Mr. Schindel to professional discipline or loss of his license as a Professional Geologist if he did carry out the order. This was a Hobson's choice that Hamilton used to get rid of him either way.[2] Mr. Schindel

---

[2] Please recall Geary Schindel did not take this Hobson's choice lightly. He discussed the matter in hypothetical terms to preserve the confidentiality of the persons and parties involved with the Chair of the Texas Board of Professional Geoscientists. The chair agreed with Schindel that the request to remove the section put him in an untenable situation. He could violate the Code of Professional Conduct and remove the material requested by his supervisor or submit the correct data science and be subject to disciplinary action – including termination and loss of certain retirement benefits. She counseled that removal of correct data science from a peer-reviewed publication would subject him to disciplinary action including possible loss of his license.

contends this manipulation by Hamilton was retaliation for having asserted his rights pursuant to the ADEA.  ROA.567-75.

**A**RGUMENT

## I. Appellant's First Issue

The district court misapplied the standard for dismissing Appellant Schindel's specific and supported claims that he was subjected to a hostile work environment based on his age, over sixty-two (62), at the time of his demotion and, over sixty-four (64), at the time of his coerced retirement in violation of the Age Discrimination in Employment Act (ADEA) 29 U.S.C § 623.

### A. Standard of Review

"Dismissals for failure to state a claim are reviewed *de novo*."  *Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 714 (5th Cir. 2021).  At this stage in the proceedings, the panel must "accept all well-pleaded facts as true, drawing all reasonable inferences in the non-moving party's favor."  *Mayfield v. Currie*, 976 F.3d 482, 485 (5th Cir. 2020) (citation omitted).

Dismissal is appropriate if a plaintiff failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether the party should be permitted to present evidence to support adequately asserted causes of action. *Twombly*, 550 U.S. at 563, n. 8. Accordingly, under FED.R.CIV.P. 12(b)(6), dismissal "can be based either on a lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998). "Thus the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

## B.    Law for Dismissal

Rule 12 motions are asserted at the outset before the parties have been able to engage in any discovery. Therefore, to survive a Federal Rule 12(b)(6) motion, a plaintiff does not need to provide detailed factual allegations, but must provide grounds for his entitlement to relief. Therefore, the court's task is to identify the elements of a cause of action and then determine whether the plaintiff pled sufficient factual allegations in support of the asserted elements to state a plausible claim, and

thereby, survive a motion to dismiss. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766-67 (5th Cir. 2019). Geary Schindel more than met this standard.

In asserting a motion to dismiss under Federal Rule 12(b)(6), the court's review is limited to the Complaint and any documents attached to the Motion to Dismiss, which are also referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin L. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). It is respectfully submitted the court below failed to accept Schindel's well-pleaded facts as true or view them in the light most favorable to him. *See*, *Thorton v. Lymous*, 850 Fed. Appx. 320, 321 (5th Cir. 2021) (quoting *Martin L. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation marks and citations omitted)).

The district court misapplied the standard for dismissing claims pursuant to Rule 12(b)(6), Fed.R.Civ.P. in this case. Geary Schindel filed a First Amended Complaint on December 14, 2022. ROA.201-14. Plaintiff's discovery was stayed by a recent standing order of the court.

A Complaint should only be dismissed under Federal Rule 12(b)(6) after affording ample opportunity to the plaintiff to state a claim upon which relief can be

granted, unless it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977); *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a court must allow a plaintiff the opportunity to amend the Complaint. *Hitt*, 561 F.2d at 608-09. The district courts' review of Mr. Schindel's First Amended Complaint failed to credit Mr. Schindel's facts in support of the asserted elements to his very plausible claims of a hostile work environment and a retaliatory coerced retirement. Moreover, the lower court failed to credit that the manner in which he was forced out (coerced into retirement) by Hamilton was based on retaliation for having filed an EEO complaint and asserted his rights through the EEOC administrative process. Specifically, Hamilton (alleged discriminating official) ordered Schindel to make changes favorable to the EAA to a peer-reviewed United States Fish and Wildlife study that the EAA was participating in; or, be fired for insubordination. ROA.625-6. *See also* pages 13-4, *supra*.

## II. Appellant's Second Issue

Appellant Schindel presented a prima facie case and probative facts from which an objective reader or jury could conclude that he was discriminated against based on his age (over 60), and was retaliated against for filing his EEOC Complaint

and asserting his rights under the ADEA, 29 U.S.C. § 623 to a workplace free from age discrimination or retaliation.

### A. Standard of Review

This Court reviews summary judgment *de novo*, applying the same standard as the district court. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2021).

### B. Law for Summary Judgment

A grant of summary judgment is proper if and only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Poole*, 691 F.3d at 627. A fact is material if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether there are genuine disputes of material fact precluding summary judgment, a court must review "all of the evidence introduced," but "all of the factual inference from the evidence are viewed in a light most favorable to the party opposing the motion." *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). A Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

judge." *Id*. (quoting *Anderson*, 477 U.S. at 255).

The "party seeking summary judgment (EAA) always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, courts view all facts and reasonable inferences drawn from the record *"in the light most favorable to the party opposing the motion." Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Once the movant (EAA) has carried its initial summary judgment burden, the burden shifts to the non-movant (Geary Schindel) to establish a genuine dispute of material fact. In this regard Geary Schindel has shown and produced much more than "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) or "improbable inferences, and unsupported speculation", Mr. Schindel showed clear probative facts that he was discriminated against based on his age, over 62, at the time of his ridiculous demotion and, over 64, at the time of his coerced retirement. *Heinsohn*, 832 F.3d at 234.

## C. Burdens Under the ADEA

The ADEA provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Geary Schindel has done this here. If we apply Mr. Schindel's facts to the well-known *McDonnell Douglas* burden-shifting framework, Mr. Schindel prevails. *See*, *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Under this framework, a plaintiff has the initial burden to establish a *prima facie* case of age discrimination and retaliation. *McMichael v. Transocean Offshore DeepwaterDrilling,Inc.*, 934 F.3d 447, 456 (5th Cir. 2019). A *prima facie* case of age discrimination requires the plaintiff to show that he (1) was part of the protected age group (40 years or in this case over 60 years); (2) was qualified for the position at issue; (3) suffered a final, adverse employment action; a demotion of over $50,000.00 per year and later a coerced retirement, and (4) was either (a) replaced by someone younger or (b) otherwise treated less favorably than similarly-situated younger employees. *Norseworthy v. HISD*, 70 F.4th 332, 337 (5th Cir. 2023); *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013). This is amply shown here in Mr. Schindel's case in spite of the EAA's often tried, worn out defense claim that he has not been replaced as a Chief Technical Officer (CTO). ROA.667. We know this because all of Mr. Schindel's managerial, supervisory, and mentoring functions were taken away from him and delegated to younger employees. ROA.530; ROA.667; ROA.669. Please note this younger

employee was a prior co-worker (at a different employer) of our alleged discriminating official Mark Hamilton. ROA.529-30; ROA.669. *See*, *Iglesias v. Electrolux Home Care Products, Ltd.*, No. EP-19-CV-30-KC, 2019 WL 6711476, at *1, *12-3 (W.D. Tex. — El Paso Dec. 6, 2019) (discussing how plaintiff's position being eliminated and her duties distributed among younger employees, despite plaintiff being more qualified, establishes enough evidence that contributes to a disputed material fact that is better for a jury to decide).

Accordingly, plaintiff Geary Schindel made out a *prima facie* case of age discrimination based on age (62 years at the time of demotion) and (64 at time of coerced retirement) retaliation for having filed an EEOC complaint. Therefore, the burden shifted to the EAA to provide a legitimate, non-discriminatory reason for their highly suspect employment decisions. *McMichael*, 934 F.3d at 456. If the EAA articulates such a reason (which the EAA failed to do), the burden shifts back to the plaintiff to show that that the employer's reason is pretext for age discrimination and/or retaliation. *Id.*; *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) ("[t]he ultimate determination, in every case, is whether viewing all of the evidence in a light most favorable to plaintiff (Geary Schindel), a reasonable fact finder could infer discrimination") (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)). The answer to this question here has to be a resounding affirmation that a reasonable fact finder could

infer discrimination and likely would infer discrimination and retaliation.

To avoid summary judgment, it is the plaintiff's ultimate burden to point to the existence of evidence sufficient to create a fact issue that age was the "but for" cause of the challenged discriminatory act. *McMichael*, 934 F.3d at 455 ("To establish an ADEA claim, the plaintiff must show that his age was the 'but for' cause of his termination, (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)); *Ripoll v. Dobard*, 618 F. App'x 188, 191 (5th Cir. 2015). Fortunately, Geary Schindel has more than enough evidence.

### D.    Plaintiff's Bogus Demotion

### 1) Geary Schindel has Shown a Prima Face Case of Age Discrimination

The EAA is not entitled to summary judgment because Plaintiff established a *prima facie* case of age discrimination with respect to his demotion and coerced retirement. Please note the EAA does ***not contest*** the first three elements of the prima facie case. That is, Plaintiff is clearly within the protected age group (well over 60), he was qualified for the Chief Technical Officer position from which he was demoted since he held the position for about twenty (20) years and received commendations for his work and performance. Mr. Schindel's demotion and subsequent coerced retirement constitute adverse employment actions.

Plaintiff also satisfies the fourth element. After Plaintiff's demotion, the EAA claims it did not hire or promote anyone younger to replace him. ROA.667.

This often tried, worn out defense; i.e. that the CTO position has not been filled will not work here because the duties and responsibilities of the CTO position were delegated to much younger employees.  ROA.667; ROA.669.  In addition, there is clear testimonial evidence in the record that similarly- situated younger employees, under "nearly identical circumstances" were treated much more favorably than Plaintiff.  *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022).  For example, Mr. Schindel was one of the founders of the internship program, which was designed to give college students actual experience in geoscience during summers or a semester under a mentor.  ROA.529.  Geary Schindel always received great reviews by both student interns and staff mentors.  ROA.529-30.  Some of his students eventually joined the EAA after completion of their studies and licensure.  ROA.529.  This program was taken away from Mr. Schindel by Mark Hamilton and told that they were going to assign it to "*younger employees*"; these younger employees were not licensed Professional Geoscientists at the time.  ROA.530.  Additionally, the EAA's Human Resources Director testified that the CTO position had been eliminated and reclassified as an Environmental Scientist II position filled by Jewell Cozort who was in her late thirties (30's).  ROA.667; ROA.669.

Accordingly, despite the EAA's best efforts to frustrate Mr. Schindel's prima facie claim, Mr. Schindel has shown that each element has been met.

ROA.529-30.

### 2)  The EAA's Alleged Non-Discriminatory Reason for Demoting Plaintiff

Assuming the Court finds that Plaintiff has established a *prima facie* case of age discrimination, the EAA cannot meet its burden to articulate a legitimate, non-discriminatory reason for the demotion.  First of all the adverse personal action (demotion) was based on alleged "texts" to Mr. Schindel by the alleged discriminating official Mark Hamilton who was not present at the field inspection site and had not participated in the pre-planning meeting(s) convened by Mr. Schindel well in advance of the inspections on December 4, 2019.  ROA.604. Second, Mr. Hamilton claimed that EAA's Jesse Chadwick, P.G. and/or Jennifer Adkins-Schudrowitz, P.G. were in unreasonable danger.  Nothing however, could have been farther from the truth. Jesse Chadwick, P.G. and Jennifer Adkins-Schudrowitz, P.G. were both pleased to be doing field work, both had safety equipment and neither of them engaged in anything other than very shallow descents that ranged from 2 to 5 feet to 10 feet at most.  ROA.537-9.  Only Jesse Chadwick did the five (5) to ten (10) foot descent.  ROA.537-9.  They were never out of Mr. Schindel's sight and the sight of others as well as within hearing distance of all team members.  ROA.539.

Hamilton *never* went to the relatively close Keith Zars property either before or after his text order to Mr. Schindel to stop the inspection or stop placing Jesse

Chadwick or Jennifer Adkins-Schudrowitz in "unreasonably dangerous" positions. None of this was ever true.

- Entry into a hazardous area that was not sanctioned by the EAA and exposed staff members to serious bodily injury or death. **(Not true)**.

-  Plaintiff did not obtain authority from his supervisors or anyone else at the EAA to enter a sinkhole because Mark Hamilton did not attend the pre-planning meeting or the inspection on December 4, 2019. **(Not true or accurate)**.

- The EAA through Mr. Schindel had provided training to many interested EAA staffers and others and Mr. Schindel had in fact authored the cave and Karst entry procedures and protocols for the EAA that were in use at the time by the EAA as well as other agencies.

- All the inspection team members' actions on December 4, 2019 were necessary, safe, and essential to carry out the field inspection mission safely and effectively.

- In fact, these spurious claims by Hamilton for Schindel's demotion were denied ("scoffed at") by one of the Professional Geoscientist, Jesse Chadwick and denied by both.

### 3) The Evidence is Much More Than Sufficient to Show that the Reason for Plaintiff's Demotion was Pretext for Age Discrimination and Retaliation

At this stage of the burden-shifting analysis, it is Plaintiff's burden to raise a genuine issue of fact that the EAA's reason for demoting him was pretext for age discrimination and/or retaliation for asserting his right to a workplace free of unlawful discrimination. *Miller v. Raytheon*, 716 F.3d 138, 144 (5th Cir. 2013). Plaintiff has met his burden and then some.

#### a.    **Ample Evidence of Pretext**

27

The EAA is a public agency. As such it is required to accord at least a modicum of due process when adverse personnel actions are taken against its public employees.  As previously noted alleged discriminating official Mark Hamilton has a history of issuing baseless disciplinary actions against Geary Schindel and others.  On one occasion, for example, plaintiff Geary Schindel was asked to make a public statement by members of the press regarding an EAA matter.  Mr. Schindel followed protocol and informed EAA Management about the press request for a public comment. Hamilton declined Mr. Schindel's request to make a public comment and Mr. Schindel made *no* public or private comment to the media.  The reporter looked up a decade old archived public statement that had been authorized and issued by the EAA, and quoted from it and cited it as an archived statement.  ROA.631.  Hamilton reprimanded Mr. Schindel for making a public comment to the media even though Schindel showed that he followed Hamilton's instruction and made no comment to the press. Hamilton responded he "did not care" and kept the reprimand in place in Mr. Schindel's employment file. *Id*.  Hamilton had and has no apparent regard for the truth or falsity of his actions as confirmed by other employees in the protected age group like Jon Cradit, P.G. ROA.525-7; ROA.529-30; ROA.683.

Mr. Cradit testified that when Hamilton "became the Director of Aquifer Management Services I suggested another department be created, sometimes

referred to as Special Projects. I wrote the details of my proposal in a memo to Mark Hamilton but never heard any response to my memo from him. Sometime later[], he adopted my proposal but placed [younger] employees in charge of it...I observed Mark Hamilton manipulate the conditions of employment for most of the older employees that reported to him as either the First Level Supervisor or Second Level Supervisor. I believe he has done this systematically in an effort to rid the EAA of older employees like me, Geary Schindel, and others including Jim Winterle." ROA.526.

Mr. Cradit also testified that he,

> "*heard age related slurs in the EAA workplace by Hamilton and others.* I did not think much of these age related remarks at first but I came to realize that Hamilton was targeting older employees like me and Geary Schindel. When I say age slurs I mean words like "*old guys,*" or "*we need to get some new blood in here*" or remarks like "*you can get two young guys for the cost of one of these old guys.*" This set the tone for the EAA in my view." ROA.526-7.

### III. Appellant's Third Issue

The district court failed to address Schindel's evidence of repeated ageisms and fabricated adverse actions against EAA employees in their fifties (50's) and sixties (60's) or to address the testimony of the Professional Geologist that testified personally and in her expert capacity that she was at no time placed in danger during the field inspection or that Mr. Schindel ever failed to closely and

professionally supervise her during the field inspection; the three professional

geologists present for the inspection disputed the bases claimed for the disciplinary

action against Mr. Schindel.  This was more than sufficient evidence for a

reasonable jury to believe the employer's reasons were pretexts for unlawful

discrimination in violation of the ADEA, 29 U.S.C § 623.

### A. Standard of Review

This Court reviews summary judgment *de novo*, applying the same standard

as the district court.  *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir.

2004).

### B. Law for Summary Judgment

It was the EAA's burden to show that there was no genuine dispute as to any

material fact and that the EAA is entitled to judgment as a matter of law.  FED. R.

CIV. P. 56(a); s*ee also*, *Celotex*, 477 U.S. at 322-23.   A fact is "material" if it

would affect the outcome of a case and a dispute is "genuine" if the evidence is

such that a reasonable jury could return a verdict in favor of Mr. Schindel.

*Anderson*, 477 U.S. at 248.  Most importantly for Mr. Schindel the Court must

view the evidence and all factual inferences "in the light most favorable to" Mr.

Schindel. *Bryan*, 375 F.3d at 360

Mr. Schindel established a *prima facie* case, but the district court did not give him credit for doing so. First, the district court makes clear that it is using the "but for" standard rather than the "motivating factor" standard for his termination. ROA.727. The court engages in a defacto credibility determination which was improper by believing that Hamilton properly demoted Mr. Schindel for an alleged safety violation in spite of the sworn testimony of Geary Schindel and Jesse Chadwick all of whom were present and conducted the inspection and all of whom disputed this alleged violation and all of whom were professional geologists with specific safety training. ROA.503-4; ROA.508; ROA.536-9. Further, the only person who conducted more than a two foot decent, Jesse Chadwick, testified that she entered a Karst feature wearing a safety harness and ropes under the supervision of Mr. Schindel and then descended no more than ten (10) feet and was within sight and hearing of Mr. Schindel and the other team member at all times. ROA.536-9. The district court did not even address the sworn testimony of this professional (who was present) and instead found that the demotion must have been warranted because Director Hamilton—who was not present—said so. ROA.728-9. The district court notes that, "to establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996); *Anderson v. Goodyear Tire & Rubber Co.*, 367 F.Supp. 2d 1061, 1070 (E.D. Tex. 2004). It is respectfully submitted that the

31

only way the district court could reach this conclusion was by engaging in a credibility determination or by not viewing all factual inferences in the light most favorable to the non-movant. *Thorton*, 850 Fed. Appx. at 321 (5th Cir. 2021).

This is apparent because the "EAA conceded the first three elements exist." ROA.730. Specifically the EAA concedes that Geary Schindel, (1) is within the protected class (year of birth 1957); (2) he was qualified for the Chief Technical Officer position he held at the EAA for over twenty (20) years; (3) that he suffered an adverse employment decision; but does not find (4) that Mr. Schindel was replaced by someone younger or outside the protected age group (over 60); or suffered an adverse employment decision because of his age, over sixty (60). *Reeves, Inc.*, 530 U.S. at 142.

In order for the court to reach this conclusion, the district court relies only on Schindel's declaration where he testified that he helped found the internship program for undergraduate students and after several years of positive reviews by mentors and interns alike, was told by Hamilton "they were going to assign" the program to "young employees." ROA.731. The court found this "scant and minimal" and "self-serving" which again appears to be a credibility determination because other probative evidence is not addressed at all.

The court below makes no finding about the persons involved in the inspections, especially the two professional geologists that were allegedly put in harms way by Mr. Schindel: Jennifer Adkins-Schudrowitz, P.G. and Jesse Chadwick, P.G. who had not been interviewed at the time of Mr. Schindel's demotions.  When they were interviewed after the fact separately by the Human Resources Director, the EAA learned that the matter was not as it had been presented by Hamilton and that Jennifer Adkins-Schudrowitz, P.G. made no descent more than two (2) feet and that Jesse Chadwick, P.G. made no descent more than five (5) to ten (10) feet and yet each was wearing a harness, tethered to ropes and was within sight and hearing of Mr. Schindel and other inspection team members at all times.  ROA.537-9.

Now with regard to Mr. Schindel's evidence of pretext for age discrimination, the court was dismissive of Mr. Schindel's undisputed evidence of age slurs (ageisms) by Hamilton and others in the EAA workplace.  ROA.525-7; ROA.739-45.  Mr. Cradit testified that he,

> *"heard age related slurs in the EAA workplace by Hamilton and others...*"[w]hen I say age slurs I mean words like "*old guys*," or "*we need to get some new blood in here*" or remarks like "*you can get two young guys for the cost of one of these old guys*."  This set the tone for the EAA in my view."

33

ROA.525-7. *See*, *Mendoza v. Foot Locker Retails, Inc.*, SA-21-CV-000903-XR, 2024 WL 559259, *1, *5 (W.D. Tex.—San Antonio Feb. 12, 2024 (holding comments like, "getting old sucks," "getting old is bad," and defendant explaining she had a "young District Manager in Training" are enough for a jury to construe such comments as "discriminatory animus"); *see also*, *Machinchik v. PB Power, Inc.*, 398 F.3d 345, 353 (5th Cir. 2005), *overruled on other grounds  by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (reiterating that indirect references to an employee's age support an inference of age discrimination).

Then there is the evidence by his co-workers who explained that when Hamilton "became the Director of Aquifer Management Services I suggested another department be created, sometimes referred to as Special Projects. I wrote the details of my proposal in a memo to Mark Hamilton but never heard any response...Sometime later[]he adopted my proposal but placed [younger] employees in charge of it..."  ROA.525.  Mr. Cradit further testified, "I observed Mark Hamilton manipulate the conditions of employment for most of the older employees that reported to him as either the First Level Supervisor or Second Level Supervisor. I believe he has done this systematically in an effort to rid the EAA of older employees like me, Geary Schindel, and others including Jim Winterle."  ROA.526.  *See*, *Dabbasi v. Motiva Enterprises, L.L.C.*, 107 F.4th 500, 506-7 (5th Cir. 2024) (establishing that oral comments like, "[r]otat[ing] younger

people," in conjunction with younger people filling positions are material facts that should survive summary judgment for a jury to decide).

The court also did not address the testimony of Raquel Garza, the EAA's director of Human Resources who testified that the duties and responsibilities previously carried out by Geary Schindel were delegated to other staff members younger than Mr. Schindel. Ms. Garza further testified that the Chief Technical Officer position had not been filled after Mr. Schindel's demotion and coerced retirement.    She testified that the position had been reclassified as an "Environmental Scientist II" position and that a new hire, Jewell Cozort, was hired for the position and that she was in her late thirties (30's).   ROA.667; ROA.669.  This is further evidence that the district court did not address at all. Moreover, the evidence is not disputed and supports Geary Schindel's claim that he was discriminated on the basis of his age, over sixty (60).   ROA.667; ROA.669.   *See*, *Dabbasi*, 107 F.4th at 506-7 (5th Cir. 2024) (holding that younger people filling positions held by older people and oral comments like, "[r]otat[ing] younger people," are issues for a jury and should survive a motion for summary judgment); *see also*, *Iglesias v. Electrolux Home Care Products, Ltd.*, No. EP-19-CV-30-KC, 2019 WL 6711476, at *1, *12-3 (W.D. Tex. — El Paso Dec. 6, 2019) (stating a plaintiff's position being reclassified and duties being distributed to younger employees is enough evidence of a disputed

material fact for the jury to decide).

Accordingly, it is respectfully submitted that the district court's decision did not consider some of the most important evidence submitted by Mr. Schindel in support of his claims of discrimination on the bases of his age, over sixty (60), or the manipulation of the conditions of his employment to coerce him into retirement. The parties and our jurisprudence would be best served by reviewing the judgment of the district court and remanding this case for a trial on the merits.

## CONCLUSION AND PRAYER

Appellant respectfully requests this Court to find the district court erred in granting summary judgment, to find there are clear probative facts that Appellant, Geary Schindel, was discriminated against based on his age, over sixty-two (62), at the time of his demotion and, over sixty-four (64), at the time of his coerced retirement in violation of 29 U.S.C § 623, and vacate the district court's judgment, and remand this case for trial.

**RESPECTFULLY SUBMITTED BY:**

*/s/Edward L. Pina*
**Edward L. Piña**
Edward L. Pina & Associates, P.C.
***The Ariel House***
8118 Datapoint Drive
San Antonio, TX 78229
Telephone: (210) 614-6400
Facsimile: (210) 614-6403
Email: epina@arielhouse.com
**Counsel for Appellant Geary Schindel**

## CERTIFICATE OF SERVICE

I certify that on September 22, 2024 an exact copy of Plaintiffs-Appellant's Brief was served via ECF to counsel for the Defendant-Appellee. I further certify that: (1) all privacy redactions have been made pursuant to 5th Cir. Rule 25.2.13 and (2) the electronic submission is an exact copy of the paper documents pursuant to 5th Cir. 25.2.1

Deborah C. Trejo
KEMP SMITH, LLP
2905 San Gabriel St., Suite 205
Austin, Texas 78705
Telephone: (512) 320-5466
Facsimile: (512) 320-5431
Email: deborah.trejo@kempsmith.com

Gilbert Sanchez
KEMP SMITH, LLP
221 North Kansas, Suite 1700
El Paso, Texas 79901
Telephone: (915) 533-4424
Facsimile: (915) 546-5360
Email: gilbert.sanchez@kempsmith.com
**ATTORNEYS FOR DEFENDANT**
**EDWARDS AQUIFER AUTHORITY**

*/s/Edward L. Piña*
**EDWARD L. PINA**
**EDWARD L. PINA & ASSOCIATES, P.C.**

# CERTIFICATE OF COMPLIANCE

1.   This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 9,194 words.

2.   This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

- This brief has been prepared in a proportionally spaced typeface using Times New Roman font, a proportionally-spaced typeface, using Microsoft Word 2010 with 14-point font for the text and 12-point font for the footnotes.

*/s/Edward L. Piña*
**EDWARD L. PINA**
**EDWARD L. PINA & ASSOCIATES, P.C.**