No. 24-50377

---

## UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

---

### GEARY SCHINDEL
*Plaintiff-Appellant,*
v.
### EDWARDS AQUIFER AUTHORITY
*Defendant-Appellee.*

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS – SAN ANTONIO DIVISION
Civil Action No.: 5:22-cv-960
Honorable Jason K. Pulliam, presiding

---

## BRIEF OF APPELLEE
## EDWARDS AQUIFER AUTHORITY

---

Respectfully Submitted By:

**Kemp Smith LLP**
Deborah Trejo
State Bar No. 24007004
Gilbert L. Sanchez
State Bar No. 24060550
221 N. Kansas St., Suite 1700
El Paso, TX 79901
deborah.trejo@kempsmith.com
gilbert.sanchez@kempsmith.com

**Attorneys for Appellee**
**Edwards Aquifer Authority**

No. 24-50377

---

## UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

---

### GEARY SCHINDEL
*Plaintiff-Appellant,*
v.
### EDWARDS AQUIFER AUTHORITY
*Defendant-Appellee.*

---

### CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Honorable Court may evaluate possible disqualification or recusal:

1.    Geary Schindel, Plaintiff-Appellant

2.    Edward L. Piña, Attorney for Plaintiff-Appellant
      Edward L. Piña & Associates, P.C.
      The Ariel House
      8118 Datapoint Drive
      San Antonio, Texas 78229

3.    Edwards Aquifer Authority, Defendant-Appellee

4.    Deborah C. Trejo, Attorney for Defendant-Appellee
      Kemp Smith LLP
      2905 San Gabriel St., Suite 205
      Austin, Texas 78705

5.      Gilbert L. Sanchez, Counsel for Defendant-Appellee
        Kemp Smith LLP
        221 N. Kansas, Suite 1700
        El Paso, Texas 79901

*/s/ Gilbert L. Sanchez*
Gilbert L. Sanchez
*Attorney for Edwards Aquifer Authority*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This appeal involves well-established principles of employment law and does not involve any novel issues. Accordingly, Appellee Edwards Aquifer Authority does not believe that oral argument is necessary or helpful to deciding the issues on appeal.

# **TABLE OF CONTENTS**

Certificate of Interested Persons ............................................................. ii

Statement Regarding Oral Argument ...................................................... iv

Table of Contents ...................................................................................v

Table of Authorities.............................................................................. viii

Statement of Issues Presented .................................................................1

Statement of the Case..............................................................................2

    I. Factual Background ..........................................................................2

        A.   The EAA.................................................................................2

        B.   Schindel's Employment and Reorganizations at the EAA...................3

        C.   The Keith Zars Inspection ....................................................4

        D.   Schindel's Demotion ...........................................................7

        E.   Schindel Submits a Rebuttal to His Demotion But Does Not Allege Age Discrimination ...............................................11

        F.   Schindel's Voluntary Retirement.........................................11

        G.   Ages of Relevant Individuals ...............................................13

    II. Procedural Background ..................................................................13

        A.   Schindel's EEOC Charge ....................................................13

        B.   Schindel's Lawsuit and Amended Complaint ......................14

        C.   The District Court Partially Grants the EAA's Motion to Dismiss.....16

D.    The District Court Grants the EAA's Motion for Summary Judgment ........................................................................... 16

E.    Schindel's Notice of Appeal .............................................. 18

Summary of the Argument ..................................................... 18

Argument ................................................................................ 18

I. The EAA's 12(b)(6) Motion to Dismiss ....................... 18

A.    12(b)(6) Standard ............................................................. 22

B.    Schindel Failed to State a Claim for an Age-Based Hostile Work Environment .......................................... 23

C.    Schindel Failed to State a Claim for Retaliatory Constructive Discharge ............................................... 25

1.    Even if the Court were to find that Schindel sufficiently pled a claim for retaliatory constructive discharge, dismissal can stil be upheld on summary judgment grounds ..................................... 28

II. The EAA's Motion for Summary Judgment ................ 318

A.    Summary Judgment Standard .......................................... 30

B.    The Parties' Burdens of Proof Under the ADEA ............. 32

C.    Schindel Failed to Meet His *Prima Facie* Burden ......... 34

D.    The EAA's Non-Discriminatory Reason for Demoting Plaintiff ........ 36

E.    Schindel Failed to Demonstrate the Existence of a Genuine Fact Dispute that the EAA's Reason for Demotion is a Pretext for Age Discrimination ................................................................. 37

1.    Schindel cannot prove pretext by disputing the EAA's reason ........ 38

2.      Schindel's testimony establishes the absence of pretext..................39

3.      The evidence is insufficient to permit an inference that age was the "but for" reason for Schindel's demotion ........................................41

4.      Jon Cradit's declaration does not prove age discrimination ............43

Conclusion and Prayer ........................................................................46

Certificate of Service ..........................................................................47

Certificate of Compliance ...................................................................48

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Asheroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................22

*Austin v. Kroger Tex., L.P.*, 864 F.3d 326 (5th Cir. 2017) .........................31

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................. 22, 23

*Bienkowski. v. Am. Airlines, Inc.*, 851 F.2d 1503 (5th Cir. 1988) ...........39

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536 (5th Cir. 2005) ................32

*Bryant v. Compass Group USA, Inc..*, 413 F.3d 471 (5th Cir. 2005).......39

*Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467 (5th Cir. 2016) ...............22

*Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899 (5th Cir. 2000) ...............33

*Cuviller v. Taylor*, 503 F.3d 397 (5th Cir. 2007)......................................23

*Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435 (5th Cir. 2011) ............ 23, 31

*Duffie v. United States*, 50 F.3d 362 (5th Cir. 2010)................................32

*English v. Perdue*, 777 F. Appx. 94 (5th Cir. 2019)..................................24

*Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333 (5th Cir. 2021).......................35

*Forsyth v. Barr*, 19.F.3d 1527 (5th Cir. 1994) .................................. 31, 33

*Gregson v. Zurich Am. Ins.Co.*, 322 F.3d 883 (5th Cir. 2003) .................22

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ...............................33

*Haley v. All. Compressor, LLC*, 391 F.3d 644 (5th Cir. 2004)................26

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)................................ 23, 24

*Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428 (5th Cir. 2005) ......................26

*Heggemeier v. Caldwell Cty., Texas*, 826 F.3d 861 (5th Cir. 2016).................. 26, 30

*Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010) ...............32

*Jones v. Anderson*, 721 Fed. Appx. 333 (5th Cir. 2018) ..........................................31

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) ................ 23, 25

*Krim v. Banc Texas Grp., Inc.*, 989 F.2d 1435 (5th Cir. 1993) ................................31

*Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013) ........................................................32

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) .........................................31

*McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354 (5th Cir. 2017)......................32

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)......................................32

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447 (5th

    Cir. 2019) ............................................................................................. 32, 33, 45

*Melgar v. T.B. Butler Publ'g Co.*, 8931 F.3d 375 (5th Cir. 2019) ...........................28

*Miller v. Raytheon.*, 716 F.3d 138 (5th Cir. 2013) ..................................................37

*Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642 (5th Cir. 2008) ..............30

*Norseworthy v. HISD*, 70 F.4th 332 (5th Cir. 2023)..................................................32

*Nunez v. Allstate Ins. Co.*, 604 F.3d 840 (5th Cir. 2010)..........................................31

*Owens v. Circassia Pharmaceuticals, Inc.*, 33 F.4th 814 (5th Cir. 2022).... 20, 33, 39

*Rachid v. Jack In The Box*, 376 F.3d 305 (5th Cir. 2004) ........................................33

*Ripoll v. Dobard*, 618 Fed. Appx. 188 (5th Cir. 2015) ............................................33

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000)..........................36

*Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990 (5th Cir. 2022).................35

*Sanstad v. CB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002) ............................46

*Squyres v. Heico Companies, LLC*, 782 F.3d 224 (5th Cir. 2015) ..........................46

*Tagliabue v. Orkin, LLC*, 794 Fed.Appx. 389 (5th Cir. 2019)................................46

*Waggoner v. City of Garland*, 987 F.2d 1160 (5th Cir. 1993)................................43

*Willis v. Cleco Corp.*, 749 F.3d 314 (5th Cir. 2014)................................................38

## Rules and Statutes

29 U.S.C. § 623 ....................................................................................................2, 23

Fed. R. Civ. P. 56(a) ..............................................................................................31

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1, 14, 18, 22

## STATEMENT OF ISSUES PRESENTED

1.      Whether the district court properly dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) Appellant Geary Schindel's claims for age-based hostile work environment and retaliation in the form of a constructive discharge?

2.      Whether the district court properly granted Appellee Edwards Aquifer Authority's motion for summary judgment on Appellant Geary Schindel's sole remaining claim that his demotion was motivated by age discrimination?

TO THE HONORABLE U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT:

This appeal concerns claims of discrimination and retaliation under the Age Discrimination in Employment ("ADEA"), 29 U.S.C. § 623 *et seq*. In the proceedings below, the district court partially granted Appellee Edwards Aquifer Authority (hereinafter the "EAA")'s 12(b)(6) Motion to Dismiss and dismissed Appellant Geary Schindel ("Schindel")'s claims that he was subjected to a hostile work environment based on age and retaliatory constructive discharge. After the close of discovery, the EAA moved for summary judgment on Schindel's remaining claim that he was demoted in December 2019 because of his age.

As demonstrated below, dismissal of Schindel's claims was proper, and the district court's rulings should be affirmed.

## STATEMENT OF THE CASE

### I.     Factual Background

### A.     The EAA

The EAA is a special district created by the Texas Legislature to manage and regulate the Edwards Aquifer. ROA.448.[1] The Edwards Aquifer is an underground aquifer covering approximately 3,600 square miles and serves as the principal source of water to the City of San Antonio and the surrounding region. ROA.448-49.

---

[1] The Edwards Aquifer is a "karst" aquifer, meaning that it is formed over soluble rock such as limestone and characterized by the presence of sinkholes, sinking streams, caverns, springs, and water reservoirs underground. ROA.448-49.

**B.      Schindel's Employment and Reclassifications at the EAA[2]**

In 1999, Schindel began working for the EAA in the position of Chief Technical Officer ("CTO"). ROA.375-76. At the time of his hire, Schindel reported to the General Manager. ROA.376. The General Manager is the highest-ranking position at the EAA and appointed by the EAA's board of directors. ROA.376.

During Schindel's long tenure, he saw the General Manager position change hands several times, and each time that would occur, the new General Manager would institute a reorganization. ROA.349, 449. One such reorganization occurred when John Hoyt, one of his former direct reports, became the Executive Director for Aquifer Management Services in or around 2005. ROA.377-78, 449. At that time, Schindel, who held the position of Director of Aquifer Science, began reporting directly to Mr. Hoyt. ROA.377, 449. Mr. Hoyt is older than Schindel. ROA.46.

In 2012, Roland Ruiz became the EAA's General Manager, and he holds that position to this day. ROA.718. When Mr. Hoyt retired in 2014, Mark Hamilton succeeded him (Hoyt) as the Executive Director for Aquifer Management Services. ROA.378-79. When that occurred, Schindel began reporting directly to Hamilton. ROA.378-79, 449. In 2017, Mr. Ruiz implemented another reorganization, resulting in Schindel being repositioned from the Director of Aquifer Science and CTO to just

---

[2] The EAA briefly references organizational changes at the EAA to provide context for Schindel's unsupported claims that Hamilton implemented these changes due to ageist animus. *See* Schindel's Brief, pp. 4-6.

the CTO position. ROA.379, 449. Although Schindel was relieved of his managerial duties, there was no change to his pay or benefits. ROA.379-380. Steve Johnson, who is four years older (DOB: 03/1953) than Schindel, and at one point was his subordinate, replaced him as the Director of Aquifer Services. ROA.376-77, 379, 449, 455.

In February 2019, the EAA reorganized the reporting structure and transferred Schindel to the Aquifer Protection Department. ROA.449. At that point, Schindel began reporting directly to James Boenig (DOB: 12/1960), the Director of Aquifer Protection. ROA.381, 449, 455.

### C.     The Keith Zars Inspection

In 2019 and 2020, the EAA tasked its staff with conducting on-site inspections at approximately 39 locations within the Edwards Aquifer region for the purpose of updating topography maps used by first responders. ROA.450. Because the Edwards Aquifer is an underground body of water, it is important that the maps accurately depict existing karst features and surface drainage patterns so that when responding to fire emergencies, first responders can avoid contamination of the Aquifer from the runoff of hazardous chemicals and other substances. ROA.450. Accordingly, the objective of the planned inspections was to simply evaluate the existing karst features and update the map data as necessary. ROA.382-83, 450. This project was a significant undertaking, involving cross-collaboration of staff from the EAA's

External and Regulatory Affairs Department and the Aquifer Management Services Department. ROA.450.

On December 4, 2019, EAA staff inspected Keith Zars' property in Bexar County, Texas. ROA.450. Keith Zars is a swimming pool contractor, and his property contains a sinkhole and other karst features that drain to the Edwards Aquifer. ROA.450. Furthermore, there are businesses near the Keith Zars site that are known to house hazardous chemicals which could drain into the Aquifer. ROA.450. Again, the sole objective of the inspection was to assess the surface flows and drainage of the area and evaluate any other karst features on the property for the purpose of updating the maps as necessary. ROA.450.

Schindel, a hydrogeologist with significant experience with and knowledge of karst, was tasked with leading this aspect of the inspection and training junior staff members on karst recognition.[3] ROA.450. During the inspection, Schindel and his team found several concrete culverts leading into a sinkhole. ROA.450-51. These culverts were approximately two feet in diameter and covered by a grate to inhibit entrance. ROA.450-51. Without authorization from senior staff at the EAA, Schindel removed the grates and directed two junior staff members, Jesse Chadwick and

---

[3] Schindel has a bachelor's degree in geology and a graduate degree in physical geography with a focus on karst hydrogeology. ROA.372.

Jennifer Schudrowitz, to enter the culverts and descend into the sinkhole. ROA.450-52.

Hamilton, who was not present at the Keith Zars inspection, was notified by an on-site staff member that Schindel had directed EAA employees to enter the sinkhole. ROA.450-51. The staff member also sent Hamilton a photo of Ms. Chadwick tied to the end of a rope inside the culvert. ROA.450-51. Below is the referenced photo, depicting Schindel squatting down and looking into the culvert that Ms. Chadwick (who is not visible) had entered. ROA.451, 457.



Hamilton immediately became alarmed because entry into a sinkhole is an extremely dangerous and hazardous activity that requires safety and skills training and certain specialized equipment that the EAA does not have. ROA.451. Furthermore, because entry into a subsurface sinkhole poses the risk of significant

bodily harm or death and liability issues, that activity is not authorized by the EAA. ROA.451. Adding to Hamilton's concern was that entry into the sinkhole was not even necessary to complete the field inspection. ROA.451.

Hamilton immediately sent Schindel a text message directing him to have the staff member exit the sinkhole. ROA.451. Hamilton also directed Ben Urbanczyk, the Environmental Principal Inspector, who was leading the field inspection, to communicate the directive to evacuate the sinkhole to Schindel. ROA.451. Hamilton later learned that Schindel responded in an insubordinate fashion and ignored the directive until he (Schindel) was advised that it came directly from Hamilton. Schindel later responded to Hamilton's text message in resistive manner asking, "Did I have a non-geologist second guessing what we were doing or was there some hazard I wasn't aware of." ROA.451.

### D.    Schindel's Demotion

Hamilton and Felix Marquez, Executive Director of Administration & Financial Services, met with Schindel to discuss the Keith Zars incident. ROA.451-52. Hamilton explained to Schindel that he had risked Ms. Chadwick's safety by directing her to enter a sinkhole and that entry into the sinkhole had not been authorized by the EAA. ROA.452. During this conversation, Hamilton was not aware that Ms. Schudrowitz had also entered into a sinkhole and Schindel neglected to make any mention of it. ROA.452. In a later interview with Ms. Schudrowitz,

Hamilton became aware that she had also entered into the sinkhole without any testing for safe conditions, harness or rope. ROA.452.

Schindel denied any wrongdoing or that he had risked the safety of EAA staff. ROA.452. Instead, Schindel defended himself by referencing his vast experience in cave entry and exploration, while pointing out that Hamilton, who did not have similar caving experience, was in no position to assess the appropriateness of his activities at the Keith Zars inspection.[4] ROA.452. Citing his experience, Schindel expressed to Hamilton that he did not need to obtain authorization to enter the sinkhole from anyone at the EAA. ROA.452. Hamilton was alarmed that Schindel, a senior employee, was unable or refused to acknowledge the risks and potential liabilities at hand. ROA.452.

Indeed, Schindel testified that he neither obtained authorization to enter the sinkhole from his supervisors (Boenig or Hamilton), nor did he feel he even needed their authorization. ROA.384. Not only did Schindel fail to get authorization, but during the planning meetings for the Keith Zars inspection, Schindel never communicated his intent to descend into the sinkholes. ROA.452. As Schindel testified, entering the sinkholes that day was an "on-the-spot decision" that he made once he was able to visually inspect them at the site. ROA.384. As such, Schindel

---

[4] Schindel has decades of experience entering caves, has authored materials related to cave safety, and is a member of several speleological organizations. ROA.373-74.

admitted that there were no discussions of safety protocols or assignments in the event of an injury. ROA.384-85. Schindel viewed himself as the person responsible for all safety aspects, and in the event of an emergency, the fire department's rescue team would be the next option. ROA.384-85.

Adding to the egregiousness of the situation, Hamilton learned that Schindel conducted no air sampling to determine the presence of a noxious atmosphere prior to entry into the sinkholes. ROA.453. Noxious gases such as carbon monoxide or carbon dioxide can naturally be present in caves and sinkholes. ROA.453. Also, the Keith Zars property is located in an industrial area where drainage from nearby automotive dealerships and vehicle repair shops increases the likelihood that the underground atmosphere could be contaminated by hazardous chemicals. ROA.452. The EAA does not even own any equipment to test the atmosphere, and, thus, no air sampling was conducted. ROA.453. Additionally, Schindel did not have self-contained breathing equipment present at the site if someone needed to enter the sinkhole and effectuate a rescue of a staff member who became unconscious due to the presence of noxious gases. ROA.453.

Hamilton and Marquez interviewed Urbanczyk to gain a more thorough understanding of the situation. ROA.452. Urbanczyk confirmed that, at no time, either in the planning sessions nor the day of the inspection, was he aware that Schindel intended to have staff enter the sinkhole. ROA.452. Urbanczyk also

confirmed that entry into the sinkhole was unnecessary to complete the field inspection. ROA.452.

After reviewing the underlying facts and circumstances, Hamilton determined that the incident warranted disciplinary action because Schindel exercised poor judgment in allowing two junior staff members to engage in a dangerous activity that jeopardized their health and safety. ROA.453. Furthermore, Hamilton concluded that Schindel's insubordinate belief that he did not need authority to enter the sinkholes, his lack of contrition, and his inability or refusal to acknowledge the riskiness of the situation eroded Hamilton's trust in Schindel. ROA.453.

Hamilton, Marquez, and Raquel Garza, the EAA's Human Resources Director, next discussed possible disciplinary action, including termination of Schindel's employment. ROA.453. Hamilton weighed Schindel's tenure with the EAA against the need to deter similar conduct in the future, and he decided to recommend demoting Schindel to a Senior Hydrogeologist position rather than firing him. ROA.453. The EAA's General Manager, Mr. Ruiz, approved Hamilton's recommendation. ROA.453-54.[5] The demotion resulted in a reduction to Schindel's pay to the Senior Hydrogeologist pay grade. ROA.454.

---

[5] Hamilton does not have independent authority to terminate EAA employees.

### E.    Schindel Submits a Rebuttal to His Demotion but Does Not Allege Age Discrimination

On December 19, 2019, Hamilton presented Schindel with a write-up entitled "Supervisory Counseling Record," detailing the reasons for his demotion. ROA.403-07. Schindel signed the write-up on the same date. ROA.407. On December 23, 2019, Schindel emailed his supervisors, notifying them of his intent to appeal the demotion. *See* ROA.408-09. In his email, Schindel did not allege that he was demoted because of his age. ROA.408-09.

On January 6, 2020, Schindel submitted a lengthy written rebuttal to his demotion. *See* ROA.410-42. Schindel did not allege or complain about age discrimination in his written rebuttal. ROA.391. Mr. Ruiz later notified Schindel that his demotion would be upheld. ROA.393.

The EAA did not hire anyone to replace Schindel's vacated CTO position. ROA.454. The CTO position was later reclassified to the Aquifer Environmental Scientist II position. ROA.669. As Garza explained, reclassification of the position meant "different duties, different requirements, different work." ROA.669.

### F.    Schindel's Voluntary Retirement

On April 22, 2022, Schindel tendered his written notification of retirement, effective May 6, 2022. ROA.717. In his retirement letter, Schindel makes mention of his demotion and states that the "final incident" that pushed him to retire related to his peer review of a United States Fish and Wildlife Service ("USFWS") study.

ROA.717. Schindel claimed that after completing the peer review, Hamilton required several significant changes that Schindel alleged he could not ethically make because he believed the changes were not supported by data. ROA.717. Schindel further claimed that if he had submitted the document without Hamilton's changes, he could have been terminated for insubordination. ROA.717. Ultimately, Schindel decided not to submit the peer review. ROA.717.

Hamilton was surprised by Schindel's reference to the USFWS peer review as the "final incident" causing his retirement because the last discussion about the peer review occurred in September 2021, nearly seven months before Schindel's retirement notification. ROA.454. In his letter, Schindel incorrectly stated that it was a personal peer review and not an EAA peer review. ROA.454. The USFWS reached out to Schindel to conduct the peer review because of his work as a project manager when an EAA vendor conducted the underlying study that needed to be peer viewed, thus making it an EAA peer review. ROA.454. In fact, Schindel admitted that Hamilton authorized him to work on the peer review on the condition that the EAA review it before submission. ROA.396.

Hamilton and other staff members (Chad Furl, Marc Friberg, and Paul Bertetti) reviewed Schindel's prepared document and provided comments, which included pointing out statements that Schindel had made that were not supported by the research. ROA.396, 454-55. After providing the feedback, Hamilton never heard

about the matter again and Schindel never came to him with any ethical concerns. ROA.454-55. In fact, Hamilton never told Schindel that he would be fired if he submitted the peer review without making the changes. ROA.397, 454-55.

### G.     Ages of Relevant Individuals

| Name | Date of Birth |
|------|---------------|
| Appellant Geary Schindel | 06/xx/1957 ROA.370 |
| Mark Hamilton | 08/xx/1960 ROA.455 |
| Roland Ruiz | 12/xx/1963 ROA.455 |
| James Boenig | 12/xx/1960 ROA.455 |
| Steve Johnson | 03/xx/1953 ROA.455 |

At the time of his demotion, Schindel was 62 years old. Hamilton and Ruiz were 59 and 57 years old, respectively.

## II.     Procedural Background

### A.     Schindel's EEOC Charge

On March 17, 2020, while still employed with the EAA, Schindel filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), checking the box for age discrimination and retaliation. ROA.443. In his Charge, Schindel alleged that he had been subjected to an age-based hostile work environment for over two years and he was demoted because of his age. ROA.443.

This was the only EEOC Charge Schindel ever filed. ROA.394. Schindel never amended his Charge or filed a new Charge alleging constructive discharge. ROA.394.

**B.      Schindel's Lawsuit and Amended Complaint**

On September 2, 2022, Schindel filed his Original Complaint against the EAA in the district court alleging age discrimination in violation of the ADEA. ROA.9-22. The case was assigned to the Honorable Jason Pulliam.

Judge Pulliam's standing order pertaining to civil cases requires a party to follow certain procedures before filing a motion to dismiss under Federal Rule 12(b)(6). ROA.23-24. In summary, defendant's counsel must first confer with plaintiff's counsel about the deficiencies in the original complaint and provide written notice of the right to amend the pleading pursuant to the established procedures. ROA.24. Thereafter, the plaintiff may file an advisory with the district court of the plaintiff's intent to file an amended complaint within seven days of the conference and, if applicable, shall file the amended complaint within seven days after filing the advisory. ROA.24. The defendant may then file a 12(b)(6) motion to dismiss if the plaintiff either: (1) does not file an amended complaint or (2) files an amended complaint that is still deficient. ROA.24.

In compliance with Judge Pulliam's standing order, the EAA's counsel conferred with Schindel's counsel regarding the deficiencies in Schindel's Original Complaint, and after Schindel failed to amend his pleading, on October 4, 2022, the EAA filed its 12(b)(6) Motion to Dismiss. ROA.38-49. On October 12, 2022, Schindel filed an unopposed motion to extend the deadline to respond to the EAA's

Motion to Dismiss. ROA.62-65. On October 13, 2022, the district court entered an order directing Schindel to either file an amended complaint or an advisory stating that he would not be filing an amended complaint and would respond to the Motion to Dismiss (in which case the response deadline would be extended). ROA.67-68. On October 20, 2022, Schindel filed his Advisory to the Court stating that he would not be amending his complaint. ROA.69-70. On October 25, 2022, Schindel filed his Response, and on November 1, 2022, the EAA filed its Reply. *See* ROA.73-85 (Response), 86-90 (Reply).

On November 16, 2022, while the EAA's Motion to Dismiss was pending and ripe for consideration, Magistrate Judge Richard B. Farrer held an Initial Pretrial Conference. ROA.178. At the conference, the parties discussed the EAA's Motion and Schindel's counsel then requested fourteen additional days to file an amended complaint. ROA.178. Judge Farrer granted Schindel's request, ROA.178, and Judge Pulliam entered a separate order notifying Schindel that he would not be afforded any more opportunities to amend his complaint. ROA. 179-80.

On December 14, 2022, Schindel filed his First Amended Complaint. ROA.201-14. Except for minor changes, Schindel's Amended Complaint mirrored his Original Complaint and did not cure his pleading deficiencies. Accordingly, on December 28, 2022, the EAA filed its 12(b)(6) Motion to Dismiss Schindel's Amended Complaint. ROA.215-28.

### C.    The District Court Partially Grants the EAA's Motion to Dismiss

In his Amended Complaint, Schindel asserted or attempted to assert causes of action for an age-based hostile work environment, age discrimination, retaliation, and a "mixed-motive" claim in violation of the ADEA. ROA.201-14. The EAA's Motion to Dismiss challenged all of Schindel's purported causes of action for failure to state a claim.[6] ROA.215-28.

On February 13, 2023, the district court entered an Order partially granting the EAA's to Dismiss. ROA.271-82. Specifically, the district court dismissed Schindel's age-based hostile work environment claim, the purported "mixed-motive" claim, "any presumed retaliation cause of action, and any other intended or presumed causes of action." ROA.282. The district court denied the EAA's Motion as to Schindel's age discrimination claim related to his demotion. ROA.282.

### D.    The District Court Grants the EAA's Motion for Summary Judgment

On February 22, 2024, the EAA filed its Motion for Summary Judgment on Schindel's sole remaining claim that he was demoted because of his age in violation

---

[6] Schindel's Amended Complaint was so vaguely worded that the EAA could not decipher whether he intended to plead constructive discharge as an adverse employment action taken as a result of ageist animus, retaliatory animus, or both. The EAA addressed constructive discharge as part of its analysis for both discrimination and retaliation. Later, at the summary judgment stage, Schindel clarified, for the first time, that he does not contend he was constructively discharged because of age but rather because of retaliation for having asserted his rights under the ADEA. *See* ROA.477-78 (Schindel's Response to the EAA's Motion for Summary Judgment).

of the ADEA. ROA.346-462. The EAA believed that the district court dismissed the constructive discharge claim at the 12(b)(6) stage and addressed the potential claim in its Motion for Summary Judgment only "out of abundance of caution." *See* ROA.347-48. Schindel filed his Response on March 27, 2024 (ROA.474-700), and the EAA filed its Reply on April 4, 2024 (ROA.706-19).

On April 23, 2024, the district court granted the EAA's Motion for Summary Judgment. (ROA.722-40). On the first page of the Memorandum Opinion and Order, the district court makes clear that "all" of Schindel's causes of action were dismissed at the 12(b)(6) stage, except for the age discrimination claim related to his demotion. ROA.722. The district court's language is important because it confirmed that Schindel's constructive discharge claim had been previously dismissed.

In its Order, the district court found that the evidence was insufficient to establish a *prima facie* case of age discrimination. ROA.730. "[I]n the interest of caution," however, the court proceeded with the assumption that Schindel met his *prima facie* burden. ROA.730. After finding that the EAA met its burden to articulate a legitimate, non-discriminatory reason for the demotion (i.e., Schindel's poor judgment and conduct related to the Keith Zars inspection), the district court concluded that Schindel failed to present sufficient evidence that would permit a reasonable factfinder to infer that the EAA's proffered reason was a pretext for age

discrimination. ROA.733-40. Accordingly, the district court granted summary judgment in favor of the EAA.

### E.    Schindel's Notice of Appeal

On May 3, 2024, Schindel filed his Notice of Appeal. ROA.741-42.

## SUMMARY OF THE ARGUMENT

**Schindel's Issue One**

Although not asserted with precision, Schindel appears to appeal the district court's dismissal of his hostile work environment and retaliatory constructive discharge claims under Federal Rule of Civil Procedure 12(b)(6). Applying the *Twombly/Iqbal* standard, the EAA submits that the district court properly dismissed these claims because Schindel failed to plead sufficient facts showing that he was entitled to relief.

As to the hostile work environment claim, the district court held that the pleading failed to contain any factual allegations demonstrating that Schindel was subjected to conduct "sufficiently severe or pervasive" to create a hostile work environment based on age. ROA.276-77. Instead, Schindel merely listed employment actions with which he disagreed and without any factual averments plausibly linking them to age. ROA.277. Furthermore, the district court disregarded Schindel's conclusory allegations of a hostile work environment. ROA.277.

With respect to any claims based on retaliation, the district court found that Schindel only briefly alluded to retaliation three times in his Amended Complaint and ultimately failed "to plead sufficient and plausible facts pertinent to the elements of any retaliation cause of action." ROA.274.

The district court's dismissal of these claims was proper. In his Brief, Schindel simply argues that the district court misapplied the standard for dismissal under Rule 12(b)(6) but does not elucidate exactly how the district court erred. Schindel makes no effort to direct this Court to any factual allegations in his Amended Complaint that were overlooked by the district court.

Even if the Court finds that Schindel asserted a plausible claim for retaliation based on constructive discharge, the EAA would still be entitled to dismissal as a matter of law because: (1) Schindel failed to exhaust his administrative remedies on the claim; and (2), on the merits, the evidence is insufficient to show that (a) Schindel's working conditions were so intolerable that a reasonable person in his shoes would be compelled to resign or (b) that he was constructively discharged in retaliation for engaging in a protected activity.

The district court's ruling should be affirmed.

**Schindel's Issues Two and Three**

Schindel's Issues Two and Three are premised on the same argument that the district court erred in granting summary judgment by finding that the evidence was insufficient to permit an inference that he was demoted because of his age.

The district court's grant of summary judgment in favor of the EAA was proper and should be upheld because Schindel's evidence was insufficient to establish a *prima facie* case of age discrimination or otherwise prove that the EAA's reason for the demotion was a pretext for age discrimination. Specifically, Schindel's summary judgment response rested entirely on speculation, conclusory allegations, and self-serving testimony that failed to demonstrate that age had any connection to his demotion. Moreover, the district court properly rejected Schindel's main argument in which he merely disagrees with Hamilton's reason for imposing the disciplinary demotion. Viewing the evidence in the light most favorable to Schindel, even if the decision to demote him was improper, the district court, relying on Fifth Circuit case law, correctly concluded that the evidence still fell short of permitting an inference of age discrimination. *See, e.g. Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) (unwise or incorrect employment decisions do not give rise to an inference of discrimination).

Schindel closes his Brief by arguing that the district court failed to address or consider certain evidence that was probative of age discrimination. That is untrue.

In the proceedings below, Schindel attached voluminous evidence to his summary judgment response with very few precise citations to the records. In some sections, Schindel made factual assertions that had no citations to the evidentiary record or cited to evidence that did not support the proffered fact. Even though courts are not obligated to search the record for evidence to defeat summary judgment, the district court was careful to address Schindel's evidence and arguments and explain why he failed to meet his burden. *See* ROA.734-35 (district court discussing Schindel's failure to cite to evidence but "in the interest of caution" agreeing to examine the declarations attached to his summary judgment response).

In summary, the district court's grant of summary judgment can be affirmed on the ground that Schindel failed to establish a *prima facie* case of age discrimination. If the Court were to reach the issue of whether Schindel met his burden to adduce evidence of pretext for age discrimination, summary judgment could be affirmed on this ground as well for several reasons, including that Schindel's evidence is not competent, mere disagreement with an employer's decision is insufficient to create a fact issue, and the supposed ageist comments heard by Schindel's co-worker did not permit an inference of age discrimination.

# ARGUMENT

## I.     The EAA's 12(b)(6) Motion to Dismiss

### A.     12(b)(6) Standard

Review of 12(b)(6) dismissals is *de novo*. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Federal Rule 12(b)(6) permits dismissal if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (internal citations omitted).

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff[s] and with every doubt resolved [on their] behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003). A complaint states a "plausible claim for relief" when the factual allegations contained therein indicate actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The complaint "'does not need detailed factual allegations, 'but must provide the

plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

### B.     Schindel Failed to State a Claim for an Age-Based Hostile Work Environment.

The ADEA prohibits employers from discriminating against employees on the basis of age. 29 U.S.C. § 623 *et seq*. To establish a *prima facie* hostile work environment claim under the ADEA, a plaintiff must show that: (1) he was over the age of 40; (2) he was subject to harassment based on his age; (3) the harassment created an objectively intimidating, hostile or offensive work environment; and (4) there is some basis for liability on the part of the employer. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). To be actionable, a hostile work environment claim under the ADEA must be one in which "the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.'" *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).

To survive a 12(b)(6) motion to dismiss, although the plaintiff need not establish a *prima facie* claim, a plaintiff must "provide in the complaint a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant fair notice of plaintiffs' claim for hostile work environment and

the grounds upon which that claim rests." *Kassner*, 496 F.3d at 241. Vague factual and conclusory allegations that discrimination is based on age are insufficient to state a valid claim for a hostile work environment. *English v. Perdue*, 777 F. App'x 94, 98 (5th Cir. 2019).

Schindel's Amended Complaint failed to assert a plausible age-based hostile work environment claim. In support of this cause of action, Schindel alleged: he was subjected to a hostile work environment for over three years; the hostility began when Hamilton became his supervisor and decided to alter the directors that reported to Hamilton; Hamilton changed Schindel's title and removed certain duties and responsibilities with no impact on his pay; and Hamilton has a history of issuing false reprimands. ROA.204-06. Absent from the Amended Complaint are any facts that show that the work environment was permeated with ageist animus. To get there, Schindel inserts the allegation that "Hamilton's hostility towards [him] and other older workers was palpable in the workplace." ROA.205. This sort of conclusory allegation however, falls short of Schindel's pleading burden.

The district court agreed, finding that Schindel's reference to employment decisions with which he disagreed and conclusory allegations of age discrimination were insufficient to demonstrate that he was subjected to conduct so severe or

pervasive that it created a created a hostile work environment based on age.[7] ROA.275-77. In his Brief, Schindel states that the district court misapplied the 12(b)(6) standard but fails to present a cogent argument that he sufficiently pled a hostile work environment claim. Schindel Br. 16-19. Schindel also cites cases holding that a motion to dismiss should not be granted until a plaintiff has been granted an opportunity to amend, as if to suggest that he was denied that opportunity. Schindel Br. 18-19. Of course, the procedural history discussed above shows otherwise.

Because Schindel's Amended Complaint fails to meet the threshold pleading requirements to state a claim for an age-based hostile work environment, dismissal should be affirmed.

## C. Schindel Failed to State a Claim for Retaliatory Constructive Discharge.

Schindel also challenges the district court's dismissal of his retaliation claim, which the EAA now understands is Schindel's claim that he was constructively discharged due to some unspecified retaliatory animus. The district court's dismissal was proper.

---

[7] In its hostile work environment analysis, the district court also considered Schindel's alleged constructive discharge. At the summary judgment stage, Schindel clarified that he did not assert that he was constructively discharged because of age. ROA.477. Removing that adverse action from the analysis weakens Schindel's argument that he sufficiently pled a hostile work environment claim.

To state a *prima facie* case of retaliation under the ADEA, a plaintiff must show: (1) that he engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link exists between the protected activity and the adverse employment action. *Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 869 (5th Cir. 2016). Schindel's Amended Complaint failed to allege the elements of his *prima facie* case.

First, he failed to sufficiently plead an adverse employment action. Since he was not discharged, Schindel seeks to proceed on the theory that he was constructively discharged by the EAA. A constructive discharge claim requires a plaintiff to prove that the employer made the working conditions were so intolerable that a reasonable employee in the same position would be forced to resign. *Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). The plaintiff must "demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 440 (5th Cir. 2005).

Because a constructive discharge claim is based on an aggravated hostile work environment, Schindel's failure to plead a hostile work environment claim means that, by extension, he failed to plead constructive discharge. An examination of Schindel's Amended Complaint confirms that to be the case as he pled that he was pushed into a "coerced retirement" due to Hamilton's request that he make changes

to the USFWS peer review study. ROA.210-11. Schindel contends that the changes were not supported by data and that he faced the "Hobson's choice" of submitting the changes and risking his geologist licensure or omitting the changes and being terminated for insubordination. ROA.210-11. So Schindel decided to voluntarily end his own employment. This isolated incident does not demonstrate harassment such that a reasonable person in the same position would be forced to resign.

Schindel also failed to plead the specific protected activity giving rise to the EAA's alleged retaliatory animus. As the district court noted, Schindel only alluded to "retaliation" in his Amended Complaint, without any meaningful focus on the essential elements of the claim. ROA.274. More specifically, within the context of discussing his hostile work environment and age discrimination claims, Schindel pled that the EAA's non-discriminatory reasons were "mere pretext to mask . . . retaliation against Mr. Schindel for opposing discrimination in the workplace." ROA.206. Schindel did not specify how or what he did or said to "oppose discrimination" in the workplace. In his Brief, Schindel claims that he was retaliated against for having filed an "EEO complaint," but, again, that allegation is missing from his Amended Complaint.

Finally, Schindel failed to plead any facts showing a causal nexus between his unspecified "opposition" to discrimination and the constructive discharge. Schindel did not even plead the respective dates of his protected activity and the constructive

discharge so as to provide some temporal context to his claim. Even if the Court were to accept Schindel's new claim that he was retaliated against for filing the March 17, 2020 EEOC Charge, the Amended Complaint still fails to show a connection between the Charge and his constructive discharge two years later.

Because Schindel failed to sufficiently plead a *prima facie* case of retaliation, the district court's dismissal should be affirmed.

### 1. Even if the Court were to find that Schindel sufficiently pled a claim for retaliatory constructive discharge, dismissal can still be upheld on summary judgment grounds.

The EAA respectfully submits that even if the Court were to find that Schindel pled a plausible claim of retaliation via constructive discharge, remand would be unnecessary because dismissal could be upheld on summary judgment grounds. In its Motion for Summary Judgment, the EAA, out of an abundance of caution, moved to dismiss Schindel's potential claim that he was constructively discharged because of his age. *See* ROA.347-48, 356-58. After Schindel clarified that he was claiming constructive discharge due to retaliation and not age, the EAA reiterated in its Reply that it was still entitled to judgment as a matter of law. ROA.713-15.

First, Schindel failed to exhaust his administrative remedies on this claim. Before bringing suit under the ADEA, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378-79 (5th Cir. 2019). Schindel filed

his only EEOC Charge on March 17, 2020 while he was still employed with the EAA and more than two years before he gave notice of his retirement in April 2022. ROA.368, 394, 443. The EEOC Charge referenced only his claims of a hostile work environment and demotion, and, of course, made no mention of the constructive discharge since that had not even occurred yet. Importantly, after his retirement, Schindel never amended his Charge or filed a new one to allege constructive discharge. Accordingly, he failed to exhaust his administrative remedies on his constructive discharge claim, and it should be dismissed.

Second, Schindel's constructive discharge claim fails on the merits. Schindel's retirement letter describes the USFWS peer review issue as the "last ploy that pushed [him] into a coerced retirement." ROA.211. Standing alone, this incident would not compel a reasonable person to quit, particularly because it is undisputed that Schindel was permitted to conduct the peer review on the condition that the EAA have the opportunity to review his comments before submission. Schindel consented to this condition, and that is exactly what occurred. Hamilton and others reviewed his work product and provided comments and suggestions to include omitting certain statements not supported by the research. Schindel apparently disagreed and decided not to submit the peer review after all.

Most importantly, Schindel did not immediately resign at the time of this incident. Hamilton attested that the last discussions about the USFWS peer review

occurred in September 2021. ROA.454. Hence, Schindel continued working for another seven months before submitting his retirement letter in April 2022. Clearly, the peer review incident did not make the working conditions intolerable if Schindel was able to tolerate working for seven more months.

Finally, even if the evidence is sufficient to establish a constructive discharge, there is still no evidence that the discharge was retaliatory. While there is evidence that Schindel engaged in the protected activity of filing an EEOC Charge, there is no evidence that this was the protected activity that led to his alleged forced retirement. Either way, the 25-month gap between the date he filed his EEOC Charge in March 2020, and the date that he gave notice of his retirement in April 2020, is too significant to permit an inference of a causal nexus. *Heggemeier*, 826 F.3d at 870 (concluding that 21 months between the complaint and termination was too substantial to prove causation).

For the foregoing reasons, and as an alternative basis to uphold dismissal, the EAA is also entitled to summary judgment on Schindel's constructive discharge claim.

## II.    The EAA's Motion for Summary Judgment

### A.    Summary Judgment Standard

Summary judgment is reviewed *de novo*, with the appellate court applying the same legal standards as the district court. *Noble Energy, Inc. v. Bituminous Cas. Co.*,

529 F.3d 642, 645 (5th Cir. 2008). Viewing all evidence and drawing all reasonable inferences in the nonmovant's favor, summary judgment is appropriate where "no genuine dispute of material fact" exists and "the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010). No genuine issue of material fact exists if "the record, taken as a whole, could not lead a *rational* trier of fact to find for the nonmoving party." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011) (emphasis added). While a movant must demonstrate the absence of a genuine issue of material fact, it does not need to *negate* the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). Where a movant has demonstrated no such dispute exists, the nonmovant must point to specific evidence in the summary judgment record showing that there is a material fact dispute regarding one or more essential elements of the case. *Forsyth v. Barr*, 19.F.3d 1527, 1533 (5th Cir. 1994). Where the party opposing summary judgment "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," as here, summary judgment may be proper. *Id.* (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)).

Once a movant has met its burden, the nonmovant cannot rest on mere allegations in the pleadings. *Jones v. Anderson*, 721 F. App'x 333, 335 (5th Cir. 2018)

(quoting *Duffie v. United States*, 500 F.3d 362, 371 (5th Cir. 2010). A nonmovant cannot meet its burden by advancing "metaphysical doubt as to material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

### B.    The Parties' Burdens of Proof Under the ADEA

Under the ADEA, courts analyze age discrimination claims based on circumstantial evidence (as is the case here) by applying the *McDonnell Douglas* burden-shifting framework. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Under this framework, the plaintiff has the initial burden to establish a *prima facie* case of age discrimination. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019). This requires the plaintiff to show that he: (1) is within the protected age group (40 years of age and older); (2) is qualified for the position at issue; (3) suffered an adverse employment action; and (4) was either (a) replaced by someone younger or (b) otherwise treated less favorably than similarly-situated younger employees. *Norseworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 337 (5th Cir. 2023); *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013). A plaintiff can also satisfy the fourth element by showing that

he otherwise suffered an adverse employment decision because of his age. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

If the plaintiff makes a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision. *McMichael*, 934 F.3d at 456. If the employer articulates such a reason, the burden shifts back to the plaintiff to show that that the employer's reason is a pretext for age discrimination. *Id.*; *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) ("[t]he ultimate determination, in every case, is whether viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination") (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)).

To avoid summary judgment, it is the plaintiff's ultimate burden to point to the existence of evidence sufficient to create a fact issue that age was the "but for" cause of the challenged discriminatory act. *McMichael*, 934 F.3d at 455 ("To establish an ADEA claim, the plaintiff must show that his age was the 'but for' cause of his termination – proving that age was a 'motivating factor' for the decision is not enough." (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)); *Ripoll v. Dobard*, 618 F. App'x 188, 191 (5th Cir. 2015).

### C.     Schindel Failed to Meet His *Prima Facie* Burden.

The EAA submits that it is entitled to summary judgment on Schindel's age

discrimination claim because he failed to meet his *prima facie* burden. As the EAA

conceded in its summary judgment pleadings, the first three elements of the *prima*

*facie* case are satisfied: Schindel was over 40 at the time of his demotion; he was

qualified for the Chief Technical Officer position from which he was demoted; and

his demotion was an adverse employment action. However, the district court agreed

with the EAA that Schindel did not satisfy the fourth element.

The EAA did not hire anyone to fill the CTO position that Schindel vacated,

and, therefore, Schindel cannot show that he was replaced by a younger employee.

ROA.454. In his briefing, Schindel fixates on the testimony of Raquel Garza, the

EAA's Human Resources Director, who stated that Schindel's CTO position was

reclassified to a new position (i.e., Aquifer Environmental Scientist II) with

"different duties, different requirements, different work." ROA.669. Ms. Garza

testified that the new position is held by an employee named Jewell Cozort. The fact

that Schindel's former position was reclassified to a brand new position with

different duties and responsibilities is not proof that he was replaced by a younger

employee.[8] Schindel contends broadly that his former duties were delegated to

---

[8] Notably, there is no mention of Ms. Cozart's age in the summary judgment record.

younger employees, but he cites to no evidence to support this assertion.[9] Moreover, he does not contend that *all* of his duties were delegated to *only* younger employees. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (plaintiff could not show replacement by someone outside the protected class where "his former duties are distributed among other co-workers").

Schindel also cannot satisfy the fourth prong by showing similarly-situated younger employees, under "nearly identical circumstances," were treated more favorably than him. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022). Specifically, there is no evidence in the record that a younger employee engaged in conduct "nearly identical" to Schindel's conduct and was not disciplined or otherwise treated more favorably. "The employment actions being compared will be deemed to have been taken under nearly identical circumstances where the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Ernst*, 1 F.4th at 340. There is no such evidence in the record.

---

[9] Schindel does cite to his declaration in which he asserts that oversight of interns was removed from him and assigned to younger staff. Yet removal of this single duty does not prove that he was replaced by a younger employee. Furthermore, the district court analyzed this evidence, along with Hamilton's alleged comment that he was assigning the internship program to "younger staff" under the "otherwise suffered an adverse employment action because of age" prong. *See* ROA.730. The district court concluded that this evidence was too attenuated to serve as proof that Schindel's demotion was motivated by age. ROA.730.

Accordingly, because Schindel cannot show he was replaced by a younger employee or treated less than favorably than a similarly-situated younger employee, or that he was otherwise demoted because of his age, he is unable to establish a *prima facie* case of age discrimination. Summary judgment should be affirmed on this basis.

### D.    The EAA's Non-Discriminatory Reason for Demoting Plaintiff

Assuming the Court reaches this stage of the burden-shifting framework, the EAA submits that it met its burden to articulate a legitimate, non-discriminatory reason for Schindel's demotion. This burden is "only one of production, not persuasion, involving no credibility assessments." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

Here, the EAA demoted Schindel because of his poor judgment in permitting and directing junior staff members to descend into a sinkhole at the Keith Zars inspection site. This decision was based, in part, on the following information:

- Entry to a sinkhole is a hazardous activity that was not sanctioned by the EAA and exposed the staff members to serious bodily injury or death.

- Plaintiff conceded that he did not obtain authority from his supervisors or anyone else at the EAA to enter a sinkhole and expressed his belief that he did not need to obtain any authority, citing his superior caving expertise.

- The EAA does not provide training to employees necessary to safely enter confined spaces such as a sinkhole.

- Entry into a sinkhole was unnecessary to the objective of inspection, i.e., to assess the interaction of surface drainage with karst features for the purpose of updating map data. Thus, there was no justifiable reason to expose the staff members to a potentially dangerous situation.

- Entry into a sinkhole was not discussed in advance, and, therefore, no safety protocols or plans to do so were discussed beforehand.

- Schindel did not conduct any air sampling for the presence of noxious gases to determine whether the atmosphere was safe for the staff members. Schindel had no equipment to test the atmosphere, and the EAA does not own any such equipment. Schindel also did not have self-contained breathing equipment in the event someone needed to enter a noxious environment and conduct a rescue.

- Schindel reacted in an insubordinate manner when initially directed to have staff evacuate the sinkhole. During discussions about the incident with Hamilton, Schindel was defiant and refused to acknowledge that the sinkhole entry posed risks to staff.

Based on the totality of the circumstances, Hamilton lost confidence in Schindel as a senior-level employee. Although Hamilton considered discharging Schindel, he ultimately decided to recommend a demotion instead.

**E.    Schindel Failed to Demonstrate the Existence of a Genuine Fact Dispute that the EAA's Reason for Demotion was a Pretext for Age Discrimination.**

At this stage of the burden-shifting analysis, Schindel must raise a genuine issue of fact that the EAA's reason for demoting him was as a pretext for age discrimination. *Miller v. Raytheon*, 716 F.3d 138, 144 (5th Cir. 2013). Stated differently, Schindel is required to point to evidence that would permit a jury to infer

that his age was the "but for" reason for his demotion. The EAA submits that Schindel did not and cannot meet this burden.

### 1. Schindel cannot prove pretext by disputing the EAA's reason for his demotion.

Schindel's briefing and evidence is largely devoted to disputing Hamilton's rationale in making the decision to demote him. In support thereof, Schindel attached his own lengthy declaration which serves as a point-by-point rebuttal to Hamilton's declaration, ROA.500-12, with the intent to prove that his conduct was not improper and that he did not expose staff members to any danger. Schindel also attached Jesse Chadwick's declaration, ROA. 533-40, who attested that she felt safe under Schindel's supervision during her descent into the sinkhole. Viewed in the light most favorable to Schindel, this evidence is insufficient to prove pretext.

As an initial matter, Schindel's summary judgment response is devoid of specific citations to the relevant parts of his declaration, and his Brief suffers from the same defect. The district court noted this as well in its Order but decided to review the attached evidence anyway. *See* ROA.734-35. The EAA submits that all of Schindel's uncited summary judgment evidence should be disregarded. *See Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) ("This court has regularly reminded litigants that 'Rule 56 does not impose upon the district court [or the court of appeals] a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (citations omitted).

Even if this evidence is considered, it is well established that a plaintiff cannot avoid summary judgment by disagreeing with the employer's reason for an adverse employment action. In *Owens v. Circassia Pharmaceuticals, Inc.*, this Court recently noted that "[E]mployment laws do not transform federal courts into human resources managers, so the inquiry is not whether [the employer] made a wise or even correct decision to terminate [the plaintiff]." 33 F.4th 814, 826 (5th Cir. 2022). "Instead, '[t]he ultimate determination, in every case, is whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable factfinder could infer discrimination.'" *Id*. That is because employers are not required to "make proper decisions, only non-discriminatory ones." *Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). "Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers." *Id*. (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)).

Accordingly, Schindel's arguments and evidence related to his disagreement with the EAA's decision are irrelevant. Even if the EAA's decision was ill-formed or incorrect, such a finding does not give rise to an inference of pretext.

### 2. Schindel's testimony establishes the absence of pretext.

Although it is Schindel's burden to establish pretext, the EAA has pointed out relevant portions of Schindel's testimony that show the absence of pretext and

support Hamilton's concerns.

While Schindel argues that he did not obtain permission to enter the sinkhole because Hamilton did not attend the pre-planning meeting or the inspection on December 4, 2019, Schindel's testimony tells a different story. In plain language, Schindel testified that he did not obtain authorization from Hamilton or Boenig *and* that he felt that he did not need it because they did not have his expertise. ROA.384.

As evidence of Schindel's lack of safety planning, he admitted that entering the sinkhole was an "on-the-spot decision" he made at the Keith Zars site. ROA.384. Schindel admitted that he did not discuss safety or contingency protocols with the inspection team prior to entering the sinkhole:

> Q:    Was there any discussion about safety protocols, what to do if someone was injured in that sinkhole? Were people given assignments or duties if something were to occur?
>
> A:    No. I was the person responsible for all the safety aspects. I was the most senior person, the most experienced person.

Thus, Schindel viewed himself as the only person in charge of safety and apparently had no backup plan in the event that he became incapacitated.

While Schindel seeks to convince the Court that cave entry is not dangerous, Schindel testified about his involvement in fifteen rescue missions in caves and the recovery of five bodies of people who died in caves. ROA.389.

Albeit unlikely, Schindel admitted that it was possible that noxious gases such as carbon monoxide could have been present in the sinkhole that day at the Keith

Zars site. ROA.387-388. He also admitted that he had no equipment to sample the air conditions and that his alternative solution was to have Ms. Chadwick perform the "sniff test" while in the sinkhole. ROA.386-87. Of course, this method may not be effective with respect to deadly noxious gases that have no odor or taste, such as carbon monoxide.

Finally, Schindel effectively admitted that entry into the sinkhole was unnecessary when he testified that he directed Ms. Chadwick and Ms. Schudrowitz to descend into the sinkholes because he "thought it was a good opportunity for them to practice their skills under my direction." ROA.385.

Schindel's testimony comports with Hamilton's concerns about the safety and liability issues associated with his decision to direct two junior staff members to descend into a sinkhole with no authorization, no safety planning, and without the necessary equipment to sample the atmosphere.

### 3. The evidence is insufficient to permit an inference that age was the "but for" reason for Schindel's demotion.

The summary judgment record is devoid of any evidence that would permit a reasonable factfinder to infer that age was the "but for" reason for Schindel's demotion. In other words, there is no evidence that Schindel would not been demoted "but for" his age.

First, Schindel advances the conclusory theory that Hamilton targeted older workers to get them to leave the EAA. However, the evidence established that when

Hamilton deliberated on an appropriate disciplinary action for Schindel, he considered discharging Schindel but to ultimately decided to retain and demote him instead. If Hamilton wanted to get rid of Schindel, he had the perfect opportunity to do so and failed to act.

Second, Schindel points to reorganizations within the EAA, such as when John Hoyt and Steve Johnson went from being Schindel's subordinates to his superiors, as evidence of Hamilton's ageist hostility. Both Mr. Hoyt and Mr. Johnson, however, are older than Schindel, which does not constitute evidence of age discrimination.

Third, Hamilton, the alleged bad actor in this case, is only three years younger than Schindel. Ruiz, who approved Schindel's demotion, and Boenig, Schindel's direct supervisor, are only six and three years younger than Schindel, respectively. Although not dispositive, the closeness in age of the decision-makers in this case, and their status within the protected age class, is additional evidence against a finding of age discrimination here.

Fourth, when given the opportunity to provide facts in support of his age discrimination claim, Schindel was unable to do so. Schindel was asked why he believed he was demoted because of his age, and he testified that he simply "thought" it was used by the EAA as an opportunity to push him out. ROA.615-16. Schindel's subjective belief that the EAA wanted to push him out because of his age

is insufficient to prove discrimination. *Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993) ("We have held that a plaintiff's subjective belief that his discharge was based on age is simply insufficient to establish an ADEA claim."). Furthermore, Schindel testified that he could not recall ever hearing any ageist or age-related remarks. ROA.629.

Fifth, in his summary judgment response, Schindel listed several employees who he claims were "ousted on account of their ages." *See* ROA.480. Schindel did not cite to any evidence to support this allegation. In its Reply, the EAA attached Ruiz's declaration rebutting Schindel's unsupported allegation and showing that every employee listed by Schindel either voluntarily retired from the EAA or is still employed with the EAA. ROA.718-19. One listed employee, Teresa Montez, passed away while employed with the EAA. ROA.718. Schindel repeats the same tactic in his Brief but he has now added several new names to the list that were not mentioned in proceedings below and he further makes citations to the record that do not even support what he proffers. *See* Schindel's Br. 6-7. The Court should reject Schindel's attempt to avoid summary judgment with false information and allegations that were not raised in the trial court.

### 4.  Jon Cradit's declaration does not prove age discrimination.

On appeal, Schindel argues that the district court failed to consider certain evidence such as the Amended Declaration of Jon Cradit, a former EAA employee.

43

*See* ROA.523-30. The district court considered Cradit's declaration and devoted a section in its Order explaining why this evidence was insufficient to prove age discrimination. ROA.736-38. An examination of Cradit's declaration, which is Schindel's main piece of evidence, demonstrates that the district court's decision was correct.

Cradit's declaration does not contain competent evidence of age discrimination relevant to this case. First, on Page 3 of the declaration, Cradit mentions Schindel's demotion and opines, without laying any foundation, that the demotion was without legitimate basis. ROA.525. There is no evidence that Cradit was involved in the decision to demote Schindel or is otherwise knowledgeable about or qualified to speak on or criticize the EAA's decision.

On Page 4, Cradit discusses a situation when Hamilton once threatened him with termination because some data could not be located on a laptop, which then led to a negative performance review. ROA.526. Even if true, this incident does not permit the factfinder to infer age discrimination in Cradit's case or, more importantly, in Schindel's case.

On Page 4, Cradit also stated that he observed Hamilton manipulate the working conditions of older workers, which he "believes" was calculated to get rid of them, such as Schindel, Mr. Winterle, and himself. ROA.526. The EAA objected to this portion of the declaration as conclusory and speculative, and this Court should

disregard it. Cradit's observations about older employees does not permit an inference that those employees were treated a certain way by Hamilton *because* they are older. Moreover, Cradit does not even claim that he was forced to retire.

Finally, on Pages 4-5, Cradit claims he heard ageist comments by "Mr. Hamilton and others" to include: "old guys"; "we need to get some new blood in here"; or "remarks like you can get two young guys for the cost of one of these 'old guys.'" ROA.526-27. This does not constitute credible evidence of age discrimination given that Cradit does not even specify which comments were attributed to Hamilton and which were attributed to the unnamed "others." Cradit does not even specify when the comments were made or the context of the comments.

Either way, these age-related comments constitute stray remarks that are not evidence of age discrimination. In cases where allegedly discriminatory comments are offered as circumstantial evidence (as here), under the stray remark doctrine, the comments must demonstrate: (1) discriminatory animus, (2) on the part of a person that is either primarily responsible for the challenged action or by a person with influence or leverage over the decisionmaker. *McMichael*, 934 F.3d at 457-58. Because the record is unclear about what comments Hamilton made and the context of the comments, a reasonable factfinder would not be able to conclude that the comments were made with discriminatory animus. This is especially the case here

where Mr. Hamilton is three years younger than Schindel and, thus, close in age. Also, Schindel himself could not recall anyone, including Hamilton, making ageist remarks. Last, the "old guys" and "new blood" comments do not necessarily demonstrate discriminatory animus. *See, e.g., Squyres v. Heico Cos., LLC*, 782 F.3d 224, 236 (5th Cir. 2015) ("old guy" comments not evidence of discriminatory animus where plaintiff said they were sporadic and he did not find them offensive); *Sanstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 900 (5th Cir. 2002) ("old guy" comment made in response to "young guy" comment was not discriminatory).

Even if the comments could be viewed as circumstantial evidence of age discrimination, the Fifth Circuit has held that such remarks "cannot be the sole proof of age discrimination." *Tagliabue v. Orkin, LLC*, 794 Fed. App'x 389, 399 (5th Cir. 2019) (age-related remarks insufficient to defeat summary judgment where no other evidence of age discrimination existed). Here, there is no other evidence linking Schindel's age to his demotion. As such, Cradit's testimony about ageist remarks is insufficient to defeat summary judgment.

## <u>CONCLUSION AND PRAYER</u>

For the foregoing reasons, the EAA respectfully requests that the district court's decisions dismissing Schindel's claims be affirmed.

November 21, 2024

Respectfully submitted

**KEMP SMITH LLP**

By:   */s/ Gilbert L. Sanchez*
Deborah C. Trejo
State Bar No. 24007004
Deborah.Trejo@kempmsmith.com
Gilbert L. Sanchez
Texas Bar No. 24060550
Gilbert.Sanchez@kempsmith.com
221 N. Kansas St., Ste. 1700
El Paso, Texas 79901
915.533.4424
915.546.5360 (FAX)

Attorneys for Appellee Edwards
Aquifer Authority

## CERTIFICATE OF SERVICE

I certify that on November 21, 2024, Appellee served a copy of this Brief by electronic service via the Court's CM/ECF system on all registered counsel of record.

*/s/ Gilbert L. Sanchez*
Gilbert L. Sanchez

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,386 words, excluding the parts exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Gilbert L. Sanchez*
Gilbert L. Sanchez