Case No.: 24-50377

# In the United States Court of Appeals for the Fifth Circuit

**GEARY SCHINDEL**

*Plaintiff – Appellant*

**V.**

**EDWARDS AQUIFER AUTHORITY,**

*Defendant - Appellee*

**On Appeal from**
United States District Court for the Western District of Texas

5:22-CV-960

**REPLY BRIEF OF APPELLANT GEARY SCHINDEL**

**Edward L. Piña**
Edward L. Pina & Associates, P.C.
*The Ariel House*
8118 Datapoint Drive
San Antonio, TX 78229
Telephone: (210) 614-6400
Facsimile: (210) 614-6403
Email: epina@arielhouse.com
**Counsel for Appellant**

# **CERTIFICATE OF INTERESTED PERSONS**

Undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Geary Schindel, Plaintiff-Appellant

2. Edward L. Piña, Attorney for Plaintiff-Appellant Geary Schindel
   Edward L. Piña & Associates, P.C
   The Ariel House
   8118 Datapoint Drive
   San Antonio, Texas 78229

3. Edwards Aquifer Authority, Defendant-Appellee

4. Deborah Clark Trejo, Attorney for Defendant-Appellee
   Kemp Smith, LLP
   2905 San Gabriel St, Suite 205
   Austin, Texas 78705

5. Gilbert Sanchez, Attorney for Defendant-Appellee
   Kemp Smith, LLP
   221 N. Kansas, Suite 1700
   El Paso, Texas 79901

6. The Honorable Jason K. Pulliam (United States District Court Judge);

7. The Honorable Richard B. Farrer (United States Magistrate Judge)

> */s/ Edward L. Pina*
> Attorney for Plaintiff-Appellant
> Geary Schindel

## **STATEMENT REGARDING ORAL ARGUMENT**

Appellant Geary Schindel respectfully requests an opportunity to present oral argument as Appellant believes this could significantly aid the decision making process in this case.

# **TABLE OF CONTENTS**

Contents                                                                                                    Page(s)

Certificate of Interested Persons ................................................................. ii

Statement Regarding Oral Argument ...................................................... iii

Table of Contents ........................................................................................ iv

Table of Authorities ................................................................................... iv

Argument…………………………………………………………………...1

Issue One:   The District Court Did Not Consider or Address Mr. Schindel's Most  Schindel's Age Discrimination Claim Probative Evidence and Therefore Erred in Granting Summary Judgment on Schindel's Discrimination Claim……………………………………………1

    I.    The EAA Has Failed to Meet Its Burden to Articulate a Legitimate, Non-Discriminatory Reason for Schindel's Demotion………………..3

    II.   EAA's Procedural Irregularities Indicate Pretext ................................4

    III.  Schindel Had Authorization to Conduct the Inspection…..…………4

    IV.  Hamilton's Safety Claims Are Baseless and Appear to Be Pretext…..5

    V.   The Demotion Was a Pretext for Age Discrimination and Retaliation…………………………………………………………..6

Issue Two:   Geary Schindel's Coerced Retirement Was Well Supported And Should Not Have Been Dismissed Under Rule 12(b)(6) or Rule 56…8

    I.    Substantial Evidence of Age-Based Hostile Work Environment, Coerced Retirement, and Retaliation………………….....……..8

    II. The Proverbial "Straw That Broke The Camel's Back"…………………9

```
```

Conclusion and Prayer .................................................................................. 11

Certificate of Service ................................................................................... 12

Certificate of Compliance ............................................................................ 13

# TABLE OF AUTHORITIES

**CASES**

*Adamson v. Walgreens Co.*,
   750 F.3d 73 (5th Cir. 2014)..................................................................................3

*Bonefont-Igaravidez v. Int'l Shipping Corp.*,
   659 F.3d 120 (5th Cir. 2011).......................................................................... 3, 10

*Brown v. Bunge Corp.*,
   207 F.3d 776 (5th Cir. 2000)..................................................................................3

*Collazo v. John W. Campbell Farms, Inc.*,
   213 F.2d 255 (5th Cir. 1954)..................................................................................5

*Dale v. Chicago Tribune Co.*,
   797 F.2d 458 (7th Cir. 1986)..................................................................................3

*Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315 (5th Cir. 1997)...................................10

*Harris v. Forklift Systems.*,
   510 U.S. at 21 .......................................................................................................10

*Iglesias v. Electrolux Home Care Products, Ltd.*,
   2019 WL 6711476, (W.D. Tex. — El Paso 2019)..................................................1

*McCann v. Litton Systems, Inc.*,
   986 F.2d 946 (5th Cir. 1993)................................................................................10

*Mendoza v. Foot Locker Retails, Inc.*,
   SA-21-CV-000903-XR, 2024 WL 559259, *1 (W.D. Tex.—San Antonio Feb.
   12, 2024)................................................................................................................9

*Miller v. Raytheon*,
   716 F.3d 138 (5th Cir. 2013)..................................................................................6

*Pasant v. Jackson Nat'l Life Ins. Co.*,
   52 F.3d 94 (5th Cir. 1995)......................................................................................5

*Saketkoo v. Adm'rs of Tulane Educ. Fund*,
   31 F.4th 990 (5th Cir. 2022)...................................................................................2

*Stephens v. C.I.T. Group/Equipment Financing, Inc.*,
   955 F.2d 1023 (5th Cir. 2000) ...................................................................................10

**STATUTES**

29 U.S.C § 623 ..............................................................................................................12

**RULES**

Fed.R.Civ.P. 12(b)(6) ................................................................................................. vii

Fed. R. Civ. P. 56(a) ....................................................................................................vii

# ARGUMENT

## Issue One: The District Court Did Not Consider or Address Mr. Schindel's Most Probative Evidence and Therefore Erred in Granting Summary Judgment on Schindel's Age Discrimination Claim

The EAA is attempting to mislead this Court regarding the sufficiency of Schindel's evidence to establish a *prima facie* case of age discrimination. A *prima facie* case requires the plaintiff to show the standard four elements. The EAA does not contest the first three elements. Moving on to element four element, (4) the EAA asserts that no younger individual was hired or promoted to replace Mr. Schindel, but this is inaccurate as will be shown below. ROA.667. The claim that the CTO position remains vacant is disingenuous and insufficient, as **(a)** the essential duties and responsibilities of the CTO position were, in fact, delegated to significantly younger, less qualified employees. ROA.667; ROA.669. All of Mr. Schindel's managerial, supervisory, and mentoring functions were taken away from him and delegated to *"younger"* employees. ROA.530; ROA.667; ROA.669. *See Iglesias v. Electrolux Home Care Products, Ltd.*, No. EP-19-CV-30-KC, 2019 WL 6711476, at *1, *12-3 (W.D. Tex. — El Paso Dec. 6, 2019) (discussing how a plaintiff's position being eliminated and duties redistributed among younger employees, despite being more qualified, establishes enough evidence for a jury to decide).

Moreover, **(b)** the record here contains compelling testimonial evidence that similarly situated younger employees, under "nearly identical circumstances," were treated far more favorably than Appellant Schindel. *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022). For example, Mr. Schindel was a founding member of the EAA's internship program, which provided college students with hands-on experience in geoscience under the guidance of a geoscientist mentor. ROA.529. Throughout his tenure, Mr. Schindel consistently received outstanding reviews from both student interns and staff mentors. ROA.529-30. Some of these students later joined the EAA after completing their studies and obtaining licensure. ROA.529. Please note this program was later reassigned from Schindel by Mark Hamilton, saying he decided to reassign the program to "younger employees"—*none* of whom were licensed Professional Geoscientists at the time. ROA.530. Further, the EAA's Human Resources Director testified that the CTO position Mr. Schindel held prior to his demotion had been "eliminated" and "reclassified" as an Environmental Scientist II position, which was subsequently filled by Jewell Cozort, a woman in her late thirties. ROA.667; ROA.669. Despite the EAA's best efforts to frustrate Mr. Schindel's prima facie claim, each element has been met. ROA.529-30.

Once the plaintiff establishes a *prima facie case*, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse

employment action. If the employer provides such a reason, the burden shifts back to the plaintiff to prove that the employer's stated reason is a pretext for discrimination. *Bonefont-Igaravidez v. Int'l Shipping Corp.*, 659 F.3d 120 (5th Cir. 2011); *Dale v. Chicago Tribune Co.*, 797 F.2d 458 (7th Cir. 1986); *Adamson v. Walgreens Co.*, 750 F.3d 73 (5th Cir. 2014).

### I.  The EAA Has Failed to Meet Its Burden to Articulate a Legitimate, Non-Discriminatory Reason for Schindel's Demotion

Specifically, the adverse employment action—Schindel's demotion—was allegedly based on the Keith Zars' Inspection and the purported "texts" sent by Mark Hamilton, the official accused of discrimination. However, Hamilton was not present at the field inspection on December 4, 2019, nor did he participate in the pre-planning meetings organized by Mr. Schindel well in advance of the inspection. ROA.604. Hamilton's claims that EAA employees Jesse Chadwick, P.G., and Jennifer Adkins-Schudrowitz, P.G. were placed in "unreasonable danger" are entirely unfounded. ROA. 384-386, 389, 391. Both employees were properly equipped with safety gear and engaged in very shallow descents—ranging from 2 to 10 feet[1]—while remaining within Schindel's sight and hearing distance, as well as the sight of other team members. ROA.537. Notably, both Jesse Chadwick, P.G., and Jennifer Adkins-Schudrowitz, P.G. commented that they never were never in danger during the inspection. ROA. 384-386, 389, 391. They were

---

[1] This means that the floor of the Karst was never more than 2-10 feet below the entrance.

3

shocked to later hear Hamilton's claims about the situation being hazardous and Schindel being demoted for this inspection. Jesse Chadwick's unrebutted testimony in her personal and in her expert opinion contradicting Hamilton's alleged bases for the demotion were never considered or addressed by the district court at the summary judgment stage. ROA. 533-532.

## II.   EAA's Procedural Irregularities Indicate Pretext

Compounding the EAA's failure to articulate a legitimate reason for Schindel's demotion are the EAA's significant procedural irregularities. Schindel was proposed for demotion on December 19, 2019. He requested but was not afforded an opportunity to respond to the allegations against him before his demotion was finalized on December 23, 2019. ROA. 553, 558, 561, 568, 569, 570. The EAA's disregard for its own procedures, which require that an employee be given a chance to rebut such allegations, raises questions about the true motivations behind the decision to demote Schindel. This failure to follow proper protocol supports the inference that the demotion was not based on legitimate reasons, but rather had an age-based animus.

## III.   Schindel Had Authorization to Conduct the Inspection Both Explicitly and Implicitly

Contrary to the EAA's claims, Schindel did not need prior authorization to conduct the Keith Zars inspection on December 4, 2019. The cave and Karst entry protocols, which Schindel authored, clearly place the responsibility for such

4

inspections on Schindel's (CTO's) shoulders as part of his job duties. ROA. 384-386, 389, 391. As the agency's expert and the primary author of these protocols, Schindel was inherently authorized to conduct these field inspections as he had done on numerous other inspections without requiring additional approval. ROA. 384-386, 389, 391. The protocols do not impose a requirement for Schindel to obtain specific authorization to perform his duties, nor could they, given his longstanding role as the Chief Technical Officer responsible for inspections. ROA. 384-386, 389, 391.

Even if one were to argue that the protocols do not explicitly grant Schindel this authority (which they do, by virtue of his role and responsibilities), Schindel's history of conducting these inspections for years for the EAA without objection from management provides ample evidence of implied authority. Implied authority, as established in case law and standard employment practice, holds that an employee who consistently performs a job function without challenge or interference is understood to have the authority to continue doing so. *Pasant v. Jackson Nat'l Life Ins. Co.*, 52 F.3d 94 (5th Cir. 1995); *Collazo v. John W. Campbell Farms, Inc.*, 213 F.2d 255 (5th Cir. 1954).

### IV. Hamilton's Safety Claims Are Baseless and Appear to Be Pretext

Hamilton's claims about the inspection's safety are demonstrably false and, at best, serve as a pretext for other, unlawful motives. If Hamilton genuinely

believed there was a significant safety issue, his failure to attend planning meetings, or to take direct action—such as making a phone call or going on-site to investigate—belies the urgency of his concerns. This underscores the evidence that Hamilton's claims were fabricated or, at the very least, greatly exaggerated. Schindel's actions on December 4, 2019, were well within the scope of his authority and in full compliance with the agency's safety protocols. These facts clearly show that the real motivation behind Schindel's demotion was not his job performance, but rather his age and Hamilton's animus to get him out. ROA 501 – 512, 523 – 527, 533 – 540.

**V. The Demotion Was a Pretext for Age Discrimination and Retaliation**

Appellant has raised a genuine issue of material fact regarding whether the EAA's stated reasons for the demotion were pretextual, masking age discrimination and retaliation. Under the framework established in *Miller v. Raytheon*, 716 F.3d 138, 144 (5th Cir. 2013), once Plaintiff raises a genuine issue of pretext, the burden shifts to the EAA to prove that its actions were based on legitimate, non-discriminatory reasons. Here, Appellant has demonstrated that the EAA's rationale for his demotion is a mere pretext, masking a pattern of age-based discrimination.

As the Court will recall, Mark Hamilton, the official responsible for the demotion, had a documented history of issuing unjust disciplinary actions against

6

older employees, including Schindel. For example, when a reporter made a media inquiry regarding an EAA matter, Schindel followed proper protocol and notified EAA management. ROA. 570, 571. Hamilton decided not to make a public comment and Schindel made no comment. ROA. 570, 571. When an archived EAA statement from a decade earlier was quoted by the reporter and properly identified as an archived quote, Hamilton nonetheless reprimanded Schindel, despite Schindel's adherence to Hamilton's instructions. ROA. 570, 571. Hamilton's decision to retain the reprimand in Schindel's personnel file, shows his negative animus toward Schindel. ROA.631.

Evidence of Hamilton's discriminatory conduct towards older employees was made crystal clear by Mr. Jon Cradit, a fellow geologist employee within the protected age group (over 60), who corroborated a pattern of age-related discrimination. ROA. 523- 527. Mr. Cradit, P.G. testified that Hamilton manipulated situations in the workplace to disadvantage older employees, including Schindel. ROA. 523- 527. Cradit also testified that Hamilton made age-related slurs in the workplace, such as referring to them as the "*old guys*, "or "*we need to get new blood in here*," and "*you can get two young guys for the cost of one of those old guys*." ROA. 523- 527. These comments were not isolated incidents but rather part of a larger, discriminatory culture under Hamilton's leadership. ROA.525-7; ROA.529-30; ROA.683.

7

**Issue Two: Geary Schindel's Coerced Retirement Was Well Supported And Should Not Have Been Dismissed Under Rule 12(b)(6) or Rule 56**

Geary Schindel respectfully appeals the district court's dismissal of his hostile work environment claim and his coerced retirement claim based on retaliation. The district court's decision fails to properly consider or even address significant evidence that Schindel was subjected to an aged-based hostile work environment as well as evidence that he was retaliated against by being directed by EAA management to make changes to a peer-reviewed United States Fish and Wildlife Service Study (USFWS) publication to make the Edwards Aquifer Authority look and sound better; i.e., more compliant; than the geoscience data supported. ROA. 510-12, 717.

## I. Substantial Evidence of Age-Based Hostile Work Environment, Coerced Retirement, and Retaliation

The hostile work environment Schindel experienced was rooted in pervasive age-based harassment. Schindel was subjected to derogatory comments about his age by his supervisor, Mark Hamilton, who frequently referred to older employees as "*old guys*" and expressed a desire to "*get some new blood in here*" as well as other similar remarks. ROA.526-7. These comments, along with Hamilton's preference for younger employees in key roles, created an objectively hostile atmosphere in which older employees, including Schindel and fellow geologist Jon Cradit (also over 60), were marginalized and terminated or coerced into retirement.

8

This behavior mirrors other cases where such comments have been deemed sufficient to create a jury question about a hostile work environment. *Mendoza v. Foot Locker*, 2024 WL 559259 (W.D. Tex.). The testimony of Jon Cradit, P.G., a former geologist employee who directly witnessed Hamilton's discriminatory treatment, supports the claim of age based discrimination at the EAA. ROA.526-7.

## II. The Proverbial "Straw That Broke The Camel's Back"

Two years after Geary Schindel filed his EEOC charge (March 17, 2020) regarding his demotion (effective January 11, 2020), the EAA like most other employers were faced with the unprecedented realities of COVID 19 and how best to deal with it in the workplace. The EAA required or encouraged staff to work from home when possible. This delayed some of the hostility of the work environment but Hamilton persisted. As previously noted, Geary Schindel's work on a United States Fish and Wildlife Service Study (USFWS) lead to the "straw that broke the camel's back." ROA. 510-12, 717. Towards the end of the peer review process Mr. Schindel submitted the pre-publication study for final review by EAA management. ROA. 510-12, 717. Hamilton requested a rewrite to make the EAA look and sound better in the publication than was warranted by the peer reviewed data. ROA. 510-12, 717. Geary Schindel tried his best to do so while remaining consistent with the peer reviewed data. Finally, he was directed by Hamilton to make the changes which in Schindel's professional judgement, were

9

not supported by the underlying USFWS study data. ROA. 510-12, 717. Accordingly, Mr. Schindel sought the advice and counsel of the president of the Professional Geoscience licensing board who reviewed the USFWS and considered Schindel's dilemma of pleasing or not pleasing his employer or remaining true to the data generated by the USFWS study. ROA. 510-12, 717. It was made clear to Mr. Schindel that changing the narrative in the USFWS publication with regard to the EAA, which would not be supported by the data, would put Mr. Schindel in the positon of violating the rules of professional responsibilities for his and place his license in jeopardy. ROA. 510-12, 717. Hamilton's threat of termination for insubordination left him in a position where resignation became his only option to preserve his professional integrity and likely his license. This "Hobson's Choice"- at age 64 was no real choice at all but rather intended to and did in fact coerce Geary Schindel's retirement. ROA.625-6. These facts meet the legal standard for constructive discharge, as set forth in *Harris v. Forklift Systems*, 510 U.S. at 21. *McCann v. Litton Systems, Inc.*, 986 F.2d 946 (5th Cir. 1993); *Brown v. Bunge Corp.*, 207 F.3d 776 (5th Cir. 2000); *Stephens v. C.I.T. Group/Equipment Financing, Inc.*, 955 F.2d 1023 (5th Cir. 2000); *Faruki v. Parsons S.I.P.*, Inc., 123 F.3d 315 (5th Cir. 1997).

## **CONCLUSION AND PRAYER**

Appellant Geary Schindel respectfully requests this Court to find the district court erred in granting dismissal and later summary judgment, and overlooking clear probative facts that Appellant, Geary Schindel, was discriminated against based on his age, over sixty-two (62), at the time of his demotion and, over sixty-four (64), at the time of his coerced retirement in violation of 29 U.S.C § 623, and vacate the district court's judgment, and remand this case for trial.

Respectfully submitted,

By: */s/ Edward L. Pina*
    **EDWARD L. PIÑA**
    **ATTORNEY AT LAW**
    Texas Bar No. 16011352
    **Edward L. Piña & Associates, P.C.**
    *The Ariel House*
    8118 Datapoint Drive
    San Antonio, Texas 78229
    (210) 614-6400 Telephone
    (210) 714-6403 Facsimile
    Email: epina@arielhouse.com
    **COUNSEL FOR**
    **PLAINTIFF- APPELLANT**
    **GEARY SCHINDEL**

# CERTIFICATE OF SERVICE

I certify that on December 27, 2024 an exact copy of Plaintiff-Appellant's Reply Brief was served via ECF to counsel for the Defendant-Appellee. I further certify that: (1) all privacy redactions have been made pursuant to 5th Cir. Rule 25.2.13 and (2) the electronic submission is an exact copy of the paper documents pursuant to 5th Cir. 25.2.1

Deborah C. Trejo
KEMP SMITH, LLP
2905 San Gabriel St., Suite 205
Austin, Texas 78705
Telephone: (512) 320-5466
Facsimile: (512) 320-5431
Email: deborah.trejo@kempsmith.com

Gilbert Sanchez
KEMP SMITH, LLP
221 North Kansas, Suite 1700
El Paso, Texas 79901
Telephone: (915) 533-4424
Facsimile: (915) 546-5360
Email: gilbert.sanchez@kempsmith.com
**ATTORNEYS FOR DEFENDANT-APPELLEE**
**EDWARDS AQUIFER AUTHORITY**

> /s/ Edward L. Pina
> **EDWARD L. PIÑA**
> Attorney for Plaintiff-Appellant
> Geary Schindel

# CERTIFICATE OF COMPLIANCE

This reply brief complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 3,275 words.

This reply brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman font, a proportionally-spaced typeface, using Microsoft Word 2010 with 14-point font for the text and 12-point font for the footnotes.

*/s/ Edward L. Pina*
**EDWARD L. PIÑA**
Attorney for Plaintiff-Appellant
Geary Schindel